[Civ. No. 1558.  Third Appellate District.—February 9, 1918.]

## SAUL CALLETT, Respondent, v. CENTRAL CALIFORNIA TRACTION COMPANY (a Corporation), Appellant.

NEGLIGENCE—COLLISION BETWEEN VEHICLE AND STREET-CAR—EVIDENCE —HAPPENING OF ACCIDENT.—In an action for damages for personal injuries received by the driver of a vehicle from being run down by an electric train going in the same direction, the occurrence of the accident furnishes some evidence of negligence on the part of the defendant.

ID.—SUFFICIENCY OF EVIDENCE.—In such an action the defendant was properly chargeable with negligence, where the evidence showed that with an unobstructed view, in broad daylight, on a public street of a city, the train was approaching plaintiff who was in a position of

· danger, without any warning being given of its approach, and travel-ing at an unusual rate of speed.

ID.—RIGHT TO DRIVE ON TRACK.—The driver of a vehicle on a city street on which there is a car-track has the right to drive his vehicle within ten or twelve inches of the track, or upon the track if necessary or convenient, exercising ordinary care and prudence to avoid colli-sions, and is not necessarily negligent in failing to look backward to see if any train is approaching.

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

Swisler & Butler, for Appellant.

Ralph W. Smith, and J. M. Inman, for Respondent.

BURNETT, J.—The action was for damages occasioned by the negligence of the defendant. It was tried before the court without a jury and the plaintiff was awarded the sum of eight hundred dollars. From the judgment the appeal has been taken.

The nature of the action is shown by the following allega-tions of the complaint:

"That the defendant, on the 10th day of August, 1915, was operating an electric railroad running along the said 'X' Street in the City of Sacramento. That on said day at about the hour of 3:30 o'clock in the afternoon thereof, while plaintiff, with due care and caution was proceeding in a westerly direction upon said 'X' Street to the right of the car tracks of the defendant Company thereon, seated in a wagon driving a horse thereto attached; at a point fifteen feet more or less to the east of the east curb of the intersection of 27th Street with 'X' street in said City, and while the Plain-tiff was lawfully so proceeding on said street on said day and at said time and hour, the defendant wilfully, negligently, carelessly, imprudently, and improperly propelled a freight car pushed by another car which was operated by means of an electric motor, in a westerly direction upon the northerly tracks of said Defendant Company upon said highway, at an excessive and unreasonable rate of speed, and without any regard for the safety of plaintiff or persons using said street

and highway, and failed and neglected to give any signal or warning of the approach of said car and failed and neglected to watch or look ahead to avoid injuring plaintiff and others using said street and highway. That the said freight car, while being so propelled along said track, because of the acts of defendant as aforesaid, collided with the left back wheel of the wagon in which plaintiff was riding as aforesaid, throwing plaintiff from the seat thereof with great force and violence, resulting in his sustaining great and permanent injuries.''

The plaintiff's version of the accident will appear from the following quotation from his testimony:

''I was working for Strickland; I was soliciting for him; I solicited and delivered suits of clothing. And on this particular day I was coming in from driving in the cleaning wagon, clothes wagon. I had a box wagon, put clothes on both sides, a door in the back, and a canopy over the front seat. I had been soliciting orders and delivering goods in Oak Park and I came back from Oak Park and came to about Z; came down 28th Street towards X; my horse was on a trot, or a slow trot all the way; when I came to the crossing I slowed my horse down to a walk and I looked every direction, I could not see any cars coming either way and I turned to the left. I started down toward 27th Street. I looked every way, to see any possible chance a car coming. I took the right hand side of the street, I made a large turn all around. I just went all around the corner . . . until I came to the right hand side of X Street; then I started down to 27th Street. I was driving at a rate of about 4 or 5 miles an hour at the time, the wagon was about ten or twelve inches, probably, away from the track, on the right hand side; the wheels of the wagon were not in the track at all. When I got down about two-thirds of the street, why, something hit the wagon with such force it throwed me out in front, and when I landed, I just landed straight over the foot board, and how I managed to get out of the wagon, I do not know, sure . . . There was no warning at all or whistle blown. I believe I followed a direct line from 28th Street down to the point where the accident occurred. Probably I varied an inch or two either way, I cannot recall,—I know this horse was a very gentle horse; there was no necessity of pulling the lines either way, this horse going straight.

I did not pull on the line either way; just held the line firmly and let the horse go at a steady gait.

"It is a smooth macadamized street.   The reason I turned down 28th, I have driven down there several times before, I found that road was all cut up and I went out 27th Street, found the road down there was a whole lot better for driving, so that was my reason for driving off of 28th into X and going down to 27th where the road was a whole lot better."

It is admitted that the plaintiff was quite seriously injured, and there is no contention that the amount awarded him is disproportionate to the extent of the damage he suffered, nor is there any claim of any defect or imperfection in the pleadings in the case, nor is any ruling of the trial court during the trial challenged by appellant.   There are two contentions, however, upon which appellant insists for a reversal of the judgment.   One of these is that the evidence does not show that the defendant is chargeable with negligence, and the other is that it appears conclusively from the record that plaintiff himself was guilty of contributory negligence and, therefore, under the well-established rule barred from recovery.

As to the first of these contentions it may be said that the accident itself is some evidence of negligence on the part of appellant.

The evidence shows that the plaintiff was driving along a public street; that the conductor of the train, who was sitting on top of the freight-car, had a straight clear track ahead of him, with nothing to obstruct his view of the position of plaintiff or to prevent him from perceiving the danger of a collision and, accepting the testimony of the plaintiff, as we must, it appears further that the train approached without any warning and ran down from behind the vehicle of the plaintiff.   Under such circumstances, it must be apparent that a car or train would not ordinarily run down a vehicle proceeding in the same direction without there being negligence in its operation, and the mere fact that such an accident occurred in the operation of said street-car or train furnishes at least some evidence of negligence.   It may be further said that it follows from the testimony of the plaintiff and the witness, Mrs. Mispley, that there was no gong sounded or whistle blown immediately preceding the accident

so as to give warning to the plaintiff of the approach of the car.

It is also a fair inference from the testimony of the conductor of the train and of one Doane, who was a witness for the plaintiff, that no warning was given in sufficient time to avoid the injury. It must also be said that the inference is not unreasonable that the train was traveling at an unusual rate of speed. It is true that the conductor testified to the contrary, but the facts and circumstances of the collision justify the conclusion that the train was traveling much more rapidly than he stated on the witness-stand.

We have this situation, therefore, which the trial court had a right to accept from the evidence in the case: With an unobstructed view, in broad daylight, on a public street of the city, the train was approaching the plaintiff, who was in a position of danger, no warning being given of its approach and traveling at an unusual rate of speed. The foregoing statement is sufficient to show without controversy that the defendant is properly chargeable with negligence. It will not be gainsaid that it was the duty of the defendant to travel at a moderate rate of speed throughout the streets of the city. It is equally plain that it was also the duty of the conductor to be on a constant lookout for pedestrians and vehicles and travelers generally, and to use all precautionary measures to avoid injuring anyone who might be in proximity to or upon the track and therefore in a position of danger. If the one in charge of the train omits any of these precautionary measures which we have suggested and thereby a collision is caused and damage suffered by another, the defendant is properly chargeable with actionable negligence. This must be true upon principle, and it is well supported by the authorities of this and other states.

Of course, we are not concerned with the fact that there was testimony exculpating the defendant from all blame.

As to the question of contributory negligence of plaintiff, accepting the statements of plaintiff and viewing the situation as it is presented by him and other witnesses, it cannot be successfully controverted that the finding of the court is supported by the evidence. It is well settled and hardly needs the citation of authorities that the plaintiff had a right to use the street just as he was using it, that he had the right to drive his vehicle within ten or twelve inches of the railroad

track as he declared he did, or to drive it upon the track itself if he found it necessary or convenient. It was, of course, his duty to exercise ordinary care and prudence in proceeding along the street. He could not disregard the right of others to use the street. He must keep a careful lookout to avoid a collision with other vehicles. He must pay careful heed to any warning that might be given him of the approach of any car or train from behind. Necessarily he is not required to be constantly looking backward to see whether any train may be approaching, as has been said in some of the decisions. He cannot be looking both forward and backward at the same time. His primary duty is to keep looking forward so as to avoid collision with anyone who might approach from that direction and also that he may suitably direct his course. He has a right to rely upon the exercise of care on the part of those conducting any train that might approach from behind. He has a right to believe that he will be given proper warning of the approach in order that he may place himself in a position of safety. It is well settled that a railroad company has no exclusive right to the use of the street, itself. It has, it is true, a superior right to the use of the tracks for obvious reasons, but this is not inconsistent with the right of the pedestrian or one driving a vehicle to use said street also, providing he does so in a careful way and is willing and ready to respond to any warning or signal of danger and to avoid the obstruction of the course of travel along the tracks. It makes no difference that it does not appear that the street was crowded, or that there are any mud holes or obstructions between the curb and the track to prevent plaintiff from driving near said curb. We may repeat he had a right to drive near the track and we may say, parenthetically, that the reason for his so doing is given by one of the witnesses for appellant, and, indeed, it is apparent to anyone who is familiar with the use of graded and macadamized streets. The portion of the street near the center is nearly level, and is easier for travel than the portion near the curb which is more inclined.

The horse itself, according to the testimony of this witness, would naturally seek and travel along that portion of the street near the car-track. It cannot be said that the plaintiff unreasonably or arbitrarily selected the course upon which he proceeded, but we must hold that his action under the cir-

cumstances was natural and reasonable and according to the conduct of the average prudent man under the same circumstances, and there can be no doubt that it is a reasonable inference from the record that he was free from such conduct in this case as would prevent his recovery.

We are entirely satisfied that upon these two vital issues the finding of the court is amply justified, although a contrary inference might possibly have been drawn as to each, and it seems hardly necessary to call specific attention to the decisions of the courts in reference to these questions.

We, however, cite three cases decided by our own supreme court upon which the decision herein may be safely based, as follows: *Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 414; *Swain* v. *Fourteenth St. R. R. Co.*, 93 Cal. 179, [28 Pac. 829]; *O'Connor* v. *United Railroads*, 168 Cal. 43, [141 Pac. 809].

In the first case it is held: "A person is entitled to walk on a street railroad track in a public street, using reasonable care and prudence to avoid injuries; but he is not required to abandon the track in order to avoid possible injuries which may result from the carelessness of the company, and if he is injured by the carelessness of the company while walking on the track, the fact that he might have walked by the side of the track is not contributory negligence on his part."

In the Swain case it is held: "It is not negligence *per se* for the driver of a patrol wagon to drive along and upon a street-car track, so long as he uses ordinary care to avoid a collision with the cars on the track, and it is a question for the jury whether he has used such ordinary care." Furthermore "it is the duty of a driver of a street-car to observe what is in the road before him, so as to avoid inflicting injury upon others, if practicable; and he is guilty of negligence if he omits, without apparent excuse, to look ahead and observe whether or not the track is clear."

In the O'Connor case it is held: "Other vehicles," besides the street-car, "have a right to travel over the entire street including the space between the tracks, even when other portions of the street may not be crowded or in bad condition." And that, "The rule as to 'looking' applied to the drivers of vehicles about to cross the track of a steam railroad at highway crossings does not apply to those driving along street railroad tracks laid upon public highways." And that, "The fact that the driver of such vehicle, after looking back

and not seeing any approaching car, failed to again look back during an interval in which he drove a distance of about 500 feet, did not constitute negligence *per se.*"

The foregoing authorities and others that might be cited are directly in point here. In judging of the conduct of the plaintiff, the court manifestly had a right to consider all of the circumstances in the case, including the testimony of the plaintiff, that before proceeding upon "X" Street he had carefully looked to see if any car was approaching. To say that the only rational conclusion to be drawn from the record is that plaintiff was guilty of misconduct would be to disregard the unquestionable right of the citizen to use in a careful manner the whole of the public streets of the city.

The fact that the appellant operates interurban cars over the track in question does not, in our opinion, affect the merits of the case. The train which collided with the vehicle driven by the plaintiff was a local train, and was proceeding over a track which in no respect differs from the ordinary street-car track. We can see no circumstance in the case which differentiates it from the ordinary street-cars. If there be any difference, it would rather be disadvantageous to appellant, since manifestly the operation of the train under the circumstances was attended with more danger to travelers on the street than would be the operation of the ordinary street-car. The plaintiff had the same right to use the street and the track under the same limitations, and the defendant was under the same obligation as to the speed of the train and the necessity of giving due warning of its approach.

The situation is quite different, as must be manifest, from the operation of railroad trains run by steam power upon the ordinary tracks for such trains.

There is some criticism of the action of the court in finding that the defendant was guilty of gross negligence. This conclusion was based upon the theory of the respondent that the case called for the application of "the last clear chance" doctrine. We need not, however, consider the question whether the evidence supports such theory because the finding to that effect may be ignored. The other findings as to the negligence of the defendant and the exercise of ordinary care on the part of the plaintiff are amply sufficient to support the

judgment, and we may limit our consideration to the sufficiency of the evidence to support these findings.

From a careful reading of the whole record, and attention to the construction of the elementary principles involved and the decisions of the courts, we are entirely satisfied that it must be said that there is no legal ground for disturbing the judgment of the lower court and it is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.