[Civ. No. 2921.   Second Appellate District, Division Two.—August 7, 1919.]

## COMMONWEALTH BONDING AND CASUALTY INSURANCE COMPANY (a Corporation), Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—ASSUMPTION OF RISK—QUESTION FOR JURY.—The fact that one voluntarily assumes a certain degree of risk is not conclusive of negligence. Where the precise facts under consideration are such as to give rise to an honest difference of opinion between intelligent men, the question is one for the jury.

[2] ID.—CROSSING TRACK IN FRONT OF APPROACHING CAR—WARNING OF DANGER — ASSUMPTION THAT MOTORMAN WILL USE CARE.— Although the driver of a motortruck about to cross the track in front of an approaching electric car may not willfully close his eyes to the danger, on the assumption that the motorman will act with care and prudence and in observance of the law, he cannot be deemed guilty of negligence when, if a reasonable use of his faculties does not warn him to the contrary, he rests on such assumption.

[3] ID.—DISREGARD OF INSTRUCTIONS—REVIEW BY APPELLATE COURT.— It is only in the event that the evidence does not support the verdict that the appellate court can say that the instructions to the jury were disregarded.

[4] ID.—CROSSING TRACK IN FRONT OF CAR—DISCOVERY OF DANGER BY MOTORMAN—"LAST CLEAR CHANCE" INSTRUCTION PROPER.—In this action on a subrogated claim for damages for personal injuries sustained in a collision between an electric car of the defendant company and a motortruck in which the injured person was traveling, in view of the fact that, although the occupants of the truck were at fault in attempting to cross the tracks in front of the approaching electric car, the motorman, with a better knowledge of the rate of speed at which his car was traveling, may have discovered the imminent danger of such persons attempting to cross the tracks before they themselves became aware of it, an instruction as to the "last clear chance" was proper.

[5] ID.—CASE AT BAR—PROPER INSTRUCTION.—In this action, notwithstanding the speed limit of the electric car in the locality where the accident occurred was twenty miles per hour, the court prop-

2. What constitutes voluntary exposure to unnecessary danger, note, 95 Am. St. Rep. 379.

4. Application of last clear chance doctrine to collision between street-car and motor vehicle, note, Ann. Cas. 1916E, 515.

erly instructed the jury that "it cannot be said that a person is guilty of contributory negligence merely because he attempts to cross a street railway when a car is approaching"; that "all that is required on a given occasion of a driver of a vehicle in attempting to use a street railway crossing is to exercise ordinary care of his sense of sight and hearing to observe coming cars"; and that it is not negligence to attempt to cross in front of an approaching street-car "if it is at such a distance away that an ordinarily prudent person would believe he could make such crossing in safety, although it may afterward appear by evidence that a different course of conduct would have been safer on his part."

APPEAL from a judgment of the Superior Court of Los Angeles County. G. W. Nicol, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Frank Karr, R. C. Gortner, E. E. Morris and A. W. Ashburn, Jr., for Appellant.

Haas & Dunnigan and E. B. Drake for Respondent.

SLOANE, J.—The plaintiff corporation was the insurer of the Los Angeles Daily Express Company upon its liability to its employees under the workmen's compensation law, and brought this action to recover from the defendant Pacific Electric Railway Company, for damages caused by the collision of one of the latter's electric street-cars with a motortruck of the Express Company, on which one George L. Makley was riding, and which was driven by a fellow-workman, Fenn Hart. Both of these men were employees of the Express Company. Makley was thrown from the motor car by the collision and had both legs cut off by the electric car. The plaintiff company, having paid the compensation allowed Makley under the workmen's compensation law, is maintaining this action under its subrogated claim against the Electric Railway Company.

The collision took place in Hollywood, in the city of Los Angeles, at the intersection of Hollywood Boulevard, which runs approximately east and west, and Wilton Place, a street running north and south. The motortruck was proceeding toward the south on Wilton Place and the electric car was going toward the east on the south track of the Electric Company's double-track railway on Hollywood Boulevard. The verdict

of the jury was in favor of the plaintiff, and awarded damages in the sum of eight thousand dollars. Defendant's motion for a new trial was denied, and the appeal is from the judgment upon the judgment-roll and a bill of exceptions. The grounds relied on are insufficiency of the evidence and alleged errors of the court in giving and refusing instructions.

The main contention made by appellant is that the evidence establishes contributory negligence. It does not seem to be disputed that the evidence was sufficient 'to justify the jury in finding that the defendant's motorman was guilty of negligence in driving his car at an excessive and unlawful rate of speed. The speed limit at the place of the accident, under the traffic ordinance of the city of Los Angeles, was twenty miles per hour. It was testified by a number of witnesses that the defendant's car approached the scene of the accident at a rate variously estimated at from thirty to forty miles per hour. The issue as to liability for damages, therefore, hangs on the question of contributory negligence.

There may be eliminated from this consideration the manner of the approach of the motortruck to the street intersection. The evidence sufficiently discloses that after entering the street intersection both the driver and Makley saw the approaching electric car, and that the motortruck was slowed down and under sufficient control so that it could have been stopped before reaching the track on which the electric car was approaching. The driver of the motortruck and Makley claim that at this point, where they could have stopped in safety, they saw the electric car approaching, at a distance of about two hundred feet, at what appeared to them to be a reasonable rate of speed. They were then going at about eight miles per hour, and were about twenty feet from the car track on which the electric car was approaching. The driver speeded up his motor and attempted to cross in front of the electric car. Then the collision occurred. Makley, testifying as to conditions just as they attempted to cross the car tracks, says: "I then looked to the west. When I looked to the west I saw a car about two hundred feet down the track toward Taft Street. I supposed this car was running at a reasonable rate of speed. I saw the car, of course, and it appeared to be coming at a reasonable rate of speed. It looked that way to me. I continued on

across the boulevard. . . . When we got to the west-bound track I saw that it was coming at a high rate of speed, and I raised to jump from the truck, and before I could do so the front of the car struck on the front part of the truck and knocked it from under my feet." The testimony of Fenn Hart, the driver of the truck, as to the situation at this juncture, was as follows: "My autotruck at the time I first observed the car that collided with us—the front end of the truck was possibly eight or ten feet from the north rail of the north track; that would put me somewhere around fifteen feet where I was sitting in the car back from the north rail of the north track. . . . When I saw the car it was close to Taft Street. I couldn't say how far Taft is, but it is the first street west—it is a block. I couldn't tell how fast the car was moving, but it seemed to be traveling at a reasonable rate of speed. I was going about eight or ten miles an hour at the time; the front end of the automobile truck was eight or ten feet from the first track. I was watching this car practically all the time. When I was north of the north track, possibly eight or ten feet—something like that—I opened up the throttle. When the front end of my truck was between the two tracks, more to the south than the north, I saw that I didn't have time to get across in front of it, and I tried to stop. One of my front wheels passed over the north rail of the south track, and then was when the collision happened. Just before it collided with me I saw it was traveling at least thirty-five miles per hour."

It was shown in evidence that the width between the rails of each of the car tracks was five feet, and the distance between the south rail of the north track and the north rail of the south track was seven feet. Starting with the front of the car ten feet north of the first track, the motortruck had probably thirty feet to go, besides its own length, before it would clear the approaching electric car. Fifty feet would cover the entire distance, as testified to by these witnesses. As they there saw the situation, the electric car was two hundred feet or more distant, approaching at what they supposed was a "reasonable rate of speed." Under the city ordinance that rate might not lawfully exceed twenty miles per hour. If the autotruck's accelerated speed reached even ten miles per hour, the driver of the motortruck could clear

the tracks while the electric car at twenty miles per hour covered one hundred feet of the intervening space. Of course, there can be no such mathematical accuracy of calculation in such a case, but this estimate would still leave another hundred feet as a margin of safety. They took the chances. Was it negligence, as a matter of law? Or was the jury entitled to determine the question of negligence as one of fact, in view of the conditions shown by the testimony?

[1] The fact that one voluntarily assumes a certain degree of risk is not conclusive of negligence. In these days of rapid transit and congested traffic, every man who crosses a busy street, or drives an automobile, takes chances, and serious ones. The question is, Are they greater than is reasonably necessary to meet the ordinary requirements of business, or even pleasure? Where the precise facts under consideration are such as to give rise to an honest difference of opinion between intelligent men, the question is one for the jury. We think this is such a case.

[2] If the jury accepted the testimony of the witnesses for plaintiff, as they fairly could, it is evident that the element of miscalculation on the part of the men on the auto-truck was in underestimating the speed of the approaching electric car when they determined to pass in front of it. To what extent were they entitled to rely upon the presumption that the railway company's servants were observing the speed limits, in justification for their mistake? Clearly not to the extent of shutting their eyes and crossing blindly in front of a moving car. But these men did not do that. They used their eyes and exercised their judgment, and thought that the rate of speed was reasonable, and, in view of the distance to be traveled by the electric car, would permit them to cross in safety. This would have been the result if the defendant's car had been traveling within the limits prescribed by law. Under these circumstances we think the jury would be justified in concluding that the men on the truck supplemented their own judgment of the speed of the electric car with the presumption that the law was being obeyed. This they had a right to do. Although, as already stated, one may not willfully close his eyes to danger on the assumption that another will act with care and prudence

42 Cal. App.—37

and in observance of the law, yet he cannot be deemed negligent when, if a reasonable use of his faculties does not warn him to the contrary, he rests on such assumption. (*Harris* v. *Johnson*, 174 Cal. 55, [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155]; *Mann* v. *Scott*, 180 Cal. 550, [182 Pac. 281]; *Medlin* v. *Spazier*, 23 Cal. App. 242, [137 Pac. 1078].)

[3] Appellant's second assignment of error is that the jury disregarded the instructions of the court. We fail to understand how it is made to appear in this case that the jury disregarded any of the instructions of the court in arriving at its verdict. The instructions did not direct a verdict for the defendant, but left the way open for a verdict for either the one or the other of the parties, according as the jury found upon certain ultimate facts. It is only in the event that the evidence does not support the verdict that we can say that the instructions were not followed.

No useful purpose would be served by discussing all of appellant's exceptions to the rulings of the court in granting and refusing instructions. We are satisfied that the instructions fairly covered all the matters necessary to a correct understanding by the jury of the law of the case. Some of the instructions refused correctly stated the law, but upon points sufficiently covered by the instructions given. It was, for instance, sufficiently pointed out that Makley owed a duty to look out for himself in crossing the car tracks, and might not blindly rely on the driver; and that neither of them could shut their eyes to the dangers from approaching cars, and rest secure in the assumption that the electric cars would approach the crossings in a careful and prudent manner. There was no necessity for the instructions offered and refused relating to the effect of negligence of the Commonwealth Bonding Company and the Los Angeles Daily Express on the right of plaintiff to recover, from the fact that their only connection with the events of the accident was through the agency of the men in charge of the motortruck; and it was sufficiently pointed out that contributory negligence on their part would defeat a recovery by plaintiff. [4] We think, also, that the instruction as to the "last clear chance" was not out of place. It might have appeared to the jury, under the evidence, that the occupants of the truck were at fault in attempting to cross the tracks in front of the ap-

proaching car, but that after they had placed themselves in a position of danger, which was discovered by them too late to extricate themselves, the defendant, having knowledge of their dangerous situation, might, by the exercise of diligence, still have avoided the accident. It may well be that a motorman, with a better knowledge of the rate of speed at which his car is traveling, may discover the imminent danger of persons attempting to cross the track before they themselves become aware of it; and in such a case, notwithstanding their careless disregard of danger, if he had time to stop or slow up his car, his would be the last clear chance.

[5] We think instructions 11 and 12 correctly stated the law, in declaring that "it cannot be said that a person is guilty of contributory negligence merely because, he attempts to cross a street railway when a car is approaching"; that "all that is required on a given occasion of a driver of a vehicle in attempting to use a street railway crossing is to exercise ordinary care of his sense of sight and hearing to observe coming cars"; and that it is not negligence to attempt to cross in front of an approaching street-car "if it is at such a distance away that an ordinarily prudent person would believe he could make such crossing in safety, although it may afterward appear by evidence that a different course of conduct would have been safer on his part." Counsel for appellant, while admitting the correctness of these instructions as applied to street crossings where the speed limit is from four to eight miles an hour, claims that the rule should not apply in localities where the allowed speed is twenty miles an hour. We do not see the force of the distinction. There are, ordinarily, on many lines of street railway, where a speed of twenty miles per hour is permitted, cars passing at such frequent intervals that it is rarely that a car is not approaching a given crossing. It is, of course, in such localities incumbent on one attempting to cross the tracks to take into account this greater rate of speed in determining how far in advance of an approaching car he can prudently attempt to pass. But to say he is guilty of negligence in attempting to cross at all in front of an approaching car, would place an intolerable burden and hardship on the traveler by team or automobile. We think the doctrine of *Clark* v. *Bennett,* 123 Cal. 275, [55 Pac. 908], *Scott* v. *San Bernardino Traction Co.,* 152 Cal. 610,

[93 Pac. 677], and *Campbell* v. *Los Angeles Traction Co.,* 137 Cal. 565, [70 Pac. 624], applies to crossings located as was the one under consideration here, as well as to crossings where a slower rate of speed is prescribed, subject to the qualification as to a prudent determination as to the distance of the car to correspond with the different rates of speed.

The judgment is affirmed.

Finlayson, P. J., and Thomas, J., concurred.