[Civ. No. 862.  Fourth Appellate District.—August 11, 1931.]

F. J. RING, Respondent, v. LOS ANGELES RAILWAY
CORPORATION (a Corporation), Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

Thomas P. White for Respondent.

GRIFFIN, J., *pro tem.*—This action was brought by respondent to recover damages for personal injuries alleged to have been sustained by reason of a collision between an automobile driven by himself and a street-car alleged to have been negligently operated by the appellant on Grand Avenue at its intersection with Twelfth Street in the city of Los Angeles. The answer of appellant denied the negligence charged and specifically alleged contributory negligence on the part of respondent. Upon the issues thus framed the cause was tried before a jury and resulted in a verdict in favor of respondent in the sum of $6,000.

Appellant contends that the jury was not warranted in concluding that it was negligent, and that there is no evidence in the case which would warrant a conclusion that respondent was not himself guilty of contributory negligence.

A map received in evidence and made a part of the record on appeal fixes the width of Grand Avenue at fifty-six feet and that it runs in a general northerly and southerly direction. Twelfth Street is shown to be forty feet wide and intersecting Grand Avenue at right angles.

The record further establishes the fact that this intersection is in a business district as defined by a city ordinance of the city of Los Angeles, No. 50,515 (N. S.), regulating traffic of street-cars in said city, and also as defined by section 28½ of the California Vehicle Act (Stats. 1929, p. 510, sec. 7). It is referred to in the evidence as a "blind intersection".

Just prior to the accident respondent was driving a Ford roadster in a westerly direction on Twelfth Street approaching Grand Avenue. The street-car of appellant was being driven northerly on Grand Avenue. As the street-car approached the point of the accident traveling at a fairly good rate of speed, respondent, driving the Ford with two companions seated with him, was about to cross the intersection. The evidence as to the speed of the street-car and the automobile, and the relative distances of each as they approached the intersection, is so much in conflict that it is necessary to review some of it here.

Respondent testified that on the afternoon of July 22, 1926, at about 6 o'clock, he and two friends were returning to work and were traveling from fifteen to twenty miles an hour as they approached Grand Avenue; that they came almost to a complete stop at the gully at the east side of the intersection where he shifted to low gear and proceeded into the intersection at possibly five to eight miles per hour; that as he approached Grand Avenue he looked to the right and to the left and noticed the street-car about in the middle of the block to his left; that he proceeded in low gear as far as the car track when the north-bound car collided with him; that his brakes were in good condition; that he estimated the speed of the street-car as it approached him to be about twenty-five miles an hour or more; that the second time he saw the street-car was when he was about seven and one-half feet east of the track, starting to cross; that the street-car was then about fifty or more feet from him; that it did not slacken its speed until after it had struck his automobile. On cross-examination he testified that: "At this particular time, on this day, I don't know the different distances that I could stop my car in going at different rates of speed. I made no effort to stop, as it was not for me to try to stop. I say, it was not up to me to try to stop." He further testified that as he reached the gully, and before he started to cross the track he extended his

left arm, indicating a left-hand turn. This evidence was corroborated by the driver of another car approaching closely behind him, except that this witness testified that in his opinion the street-car was traveling about eighteen or twenty miles an hour.

The testimony of this last witness, however, was apparently impeached by a statement which he made at the time of the accident to one of the investigators of appellant, wherein he said that the Ford was traveling at a speed of from eighteen to twenty miles an hour and that it did not slow down at Grand Avenue but pulled on to the street-car tracks directly in front of the north-bound car, and that the street-car was traveling about fifteen miles an hour. He could not explain why the driver of the automobile pulled directly in front of the street-car, but stated he believed he was equally to blame. When presented with this previously signed statement he accounted for this apparent difference by stating that he had signed the statement without reading it, and that had he known what was in it he would not have signed it.

Another witness, riding with respondent, testified that he saw the street-car down the track about one hundred or one hundred and twenty-five feet, going twenty-five miles an hour when the Ford entered the gully on Grand Avenue. When he next saw it, it was but ten or fifteen feet south of the Ford. He estimated its speed at that time to be twenty miles per hour, possibly faster.

The other witness, riding with respondent, stated that he was reading a newspaper as they approached the car track; that he looked up and saw the car coming; "It did not bother me and I returned to reading the paper. . . . I went back to reading the newspaper with confidence that the driver of the automobile would be able to cross the intersection in safety."

Ordinance number 50,515 (N. S.) was received in evidence. This ordinance makes it a misdemeanor for the operator of any street-car to drive the car faster than fifteen miles per hour in a business district.

A traffic officer testified that the street-car did not come to a stop for a distance of one hundred twenty feet from the center of the intersection.

Appellant's witness Hickox testified that the street-car and automobile were traveling about the same speed, to wit, eighteen or twenty miles an hour and that the street-car brakes were applied just before the collision; that it moved about thirty feet from the point of impact, which point was ten feet north of the button in the center of the intersection.

The motorman testified the street-car was going twelve miles an hour when it entered the intersection at Twelfth Street; that he first saw the Ford when it was forty-five feet from the intersection; that it was traveling from fifteen to eighteen miles an hour; that he rang his bell and applied his emergency brake at a point when the automobile was five feet from the east rail of the car track; that at that time the street-car was five feet south of that point and the driver of the Ford made no attempt to stop; that he could stop the street-car traveling at fifteen miles an hour in a distance of from sixty-five to eighty feet; that he made no stop at Twelfth Street and Grand Avenue to take on passengers; that he did not notice the Ford at the time it came to the gully because there was other traffic on the street and he was watching that. Two passengers on the street-car corroborated the testimony of the motorman.

A service man from the Ford agency testified that he had experience in driving and stopping cars as a test to determine what space it required to stop a car going at a given speed, and that a Ford roadster such as respondent's car, on dry pavement with brakes in good condition and going at eight miles an hour should stop in approximately three feet.

The violation of the ordinance above referred to would be negligence *per se*. Whether this negligence was the proximate cause of the injuries to respondent was a question for the jury. Having so found, it is sufficient to support the verdict rendered.

On the question of the contributory negligence of respondent the evidence is conflicting and much could be said in favor of appellant's contention that respondent was negligent. Can this court say, from any fact left in doubt or from any deduction or inference to be drawn from the evidence, that as a matter of law contributory negligence has been established? (*Johnson* v. *Southern Pac. R. Co.*, 154 Cal. 285 [97 Pac. 520]; *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513].)

■ The determination of this question necessarily involves consideration of the evidence. When the evidence is such that the court is impelled to say that it is not in conflict on the facts and that from these facts reasonable men can draw but one inference, and that inference points unerringly to the negligence of respondent, then, and then only, does the law step in and forbid a recovery.

■ In the case of *Commonwealth Bonding & Casualty Ins. Co.* v. *Pacific Elec. Ry. Co.*, 42 Cal. App. 573 [184 Pac. 29], the facts were similar to the facts presented in this case. We may adopt as part of this opinion the reasoning therein set forth and the law as therein applied. If the jury accepted the testimony of the witnesses for respondent, as they fairly could, it is evident that the element of miscalculation on the part of the driver of the automobile was in underestimating the speed of the approaching streetcar when he determined to pass in front of it. To what extent was he entitled to rely upon the presumption that the street-car company's servant was observing the speed limit in justification for his mistake? Clearly not to the extent of shutting his eyes and crossing blindly in front of a moving car. Adopting the most favorable evidence, this driver did not do that. He used his eyes and exercised his judgment and thought that the rate of speed was reasonable; and in view of the distance to be traveled by the street-car it would not prevent him from crossing in safety. We may anticipate that this would have been the result if the appellant's street-car had been traveling within the limits prescribed by law. Upon this theory and under these circumstances we think the jury would be justified in concluding that the driver of the automobile supplemented his own judgment of the speed of the street-car with the presumption that the law was being obeyed. This he had a right to do. ■ Although, as already stated, a person may not wilfully close his eyes to danger on the assumption that another will act with care and prudence in observance of the law, yet he cannot be deemed negligent when, if a reasonable use of his faculties does not warn him to the contrary, he rests upon this assumption. (*Harris* v. *Johnson*, 174 Cal. 55 [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155]; *Mann* v. *Scott*, 180 Cal. 550 [182 Pac. 281]; *Medlin* v. *Spazier*, 23 Cal. App. 242 [137 Pac. 1078]; *Clark*

v. *Bennett,* 123 Cal. 275 [55 Pac. 908]; *Scott* v. *San Bernardino Traction Co.,* 152 Cal. 604 [93 Pac. 677].)

■ The fact that a person voluntarily assumes a certain degree of risk is not conclusive of negligence. In these days of rapid transit and congested traffic every person who crosses a busy street or drives an automobile takes chances. The question is, are these chances greater than is reasonably necessary to meet the ordinary requirements of business or even pleasure? When the facts under consideration are such as to give rise to an honest difference of opinion between intelligent people, the question is one for the jury. We think this is such a case. (*Commonwealth Bonding & Casualty Ins. Co.* v. *Pacific Elec. Co., supra.*)

■ ■The only other question presented by appellant is its objection to the giving of the following instruction by the trial court:

"While it is the duty of the driver of an automobile upon crossing a street car track to give way to a car which is about to pass at the same time, since the automobile driver can give way and the street car cannot, and while a motorman of a street car has a right to assume that the driver of an automobile will stop or turn to one side or the other so as to avoid collision, still, when the conduct of the driver of the automobile is such as would lead a reasonable man in the position of the motorman to apprehend or fear that the driver would not stop or turn to one side to avoid a collision, then it becomes the duty of the motorman to use ordinary care to avoid injuring the driver of the automobile in the latter's perilous position; *and if the motorman observed the perilous position of the plaintiff Ring and failed to use ordinary care to avoid striking the automobile of the plaintiff Ring when the latter was in a perilous position, and as a result thereof the plaintiff sustained injury, then I instruct you that he is entitled to recover.*"

Appellant contends that the last portion of this instruction is an attempt on the part of the court to state the doctrine of the last clear chance rule and that it lacks several elements of this doctrine. If this instruction is an instruction based on this doctrine, appellant's contention finds support in the case of *Palmer* v. *Tschudy,* 191 Cal. 696–700 [218 Pac. 36]. All of appellant's and respondent's instruc-

tions offered on the doctrine of the last clear chance rule were refused by the court.

Assuming that the above instruction does not contain all of the elements necessary to correctly set forth the doctrine of the last clear chance, we cannot perceive that the elimination of these elements constituted error, or if error, that it was prejudicial to the rights of appellant. As stated, the instruction correctly states the rule applying to a case where the motorman sees that the automobile is in a place of peril and could well have been followed by the declaration that if the motorman, in the exercise of ordinary care, should see the perilous situation of an automobile, but does not, he is nevertheless as negligent as if he does see it and fails to perform his duty in the premises. (*Taylor v. Pacific Elec. Co.*, 172 Cal. 638–651 [158 Pac. 119].)

The judgment of the trial is affirmed.

Barnard, P. J., and Jennings, J., concurred.