[L. A. No. 17164. In Bank.—August 15, 1939.]

OLIVE WRIGHT, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Appellants.

Gibson, Dunn & Crutcher and E. H. Chapman for Appellants.

W. I. Gilbert, Jr., E. E. Bennett, Frank Karr, E. E. Morris, C. W. Cornell and O. O. Collins, as *Amici Curiae* on Behalf of Appellants.

Ira J. McDonald for Respondent.

THE COURT.—In this action plaintiff sought to recover a judgment for damages alleged to have been suffered by her when an automobile which she was driving in the city of Huntington Park was struck by a streetcar owned by the defendant railway corporation and operated by defendant Sherman.

It was alleged in the complaint that the proximate cause of the collision was the negligent operation of the streetcar by the defendants. By the answer the charge of negligence was denied and the issue of contributory negligence of plaintiff was specifically raised. At the close of plaintiff's case, and again at the close of the trial, the defendants' motions for a nonsuit and for a directed verdict, respectively, were denied. The jury returned a verdict in plaintiff's

favor in the sum of $7,500, and the defendants have appealed from the judgment entered thereon.

At the time of the accident here concerned, there was in effect an ordinance of the City of Huntington Park, by the provisions of which it was made unlawful for any street-car to be operated at a speed greater than 15 miles per hour in a business or a school district. The accident happened early in the afternoon of October 12, 1936, at the intersection of Pacific Boulevard and Fifty-seventh Street, which latter thoroughfare runs east and west in said city. The district along Pacific Boulevard from Fifty-sixth Street southward to Fifty-seventh Street is a business district; from Fifty-seventh Street to Fifty-eighth Street is a school zone, and there is a ''school crossing'' sign on the south side of the intersection of Pacific Boulevard and Fifty-seventh Street. On the day of the accident the defendant corporation owned and, through defendant Sherman, was operating an electric streetcar upon its right of way, which extended upon and along the center of Pacific Boulevard in a northerly and southerly direction. Shortly before the accident happened, the streetcar was being operated in a southerly direction in the block immediately north of the intersection of the boulevard and Fifty-seventh Street. At the same time, plaintiff was operating her automobile in a southerly direction along the west side of Pacific Boulevard, on a portion of the street which runs parallel with the streetcar tracks. When plaintiff reached Fifty-seventh Street she assertedly stopped at the south end of the safety zone, after which she turned her automobile in an easterly direction across the south-bound tracks of the electric railway, at which point the collision occurred,—the left side of the automobile having been struck by the streetcar.

The record shows that the evidence was substantially conflicting in each of several respects. The version given by defendant Sherman as to the speed and position of the respective vehicles, and of his acts as well as those of plaintiff, immediately prior to and at the time of the accident, differs in several material respects from the recital of plaintiff in that regard. The former testified that when the streetcar was about half a block north of Fifty-seventh Street he saw the automobile traveling south on Pacific Boulevard midway of a safety zone which was located near the intersection of Fifty-seventh Street; that at that time the street-

car was traveling at a speed of about 20 miles per hour and that the automobile was moving very slowly; that from the time he first saw the automobile until it reached the intersection he was watching it "to see what move it was going to make"; that plaintiff gave no signal that she was about to make a left turn, and that he "didn't think she [the plaintiff] was going to whirl right around in front of the street car, . . . which was done"; and that when he observed the automobile on the track in front of the streetcar, he threw off the power and "tried to stop as soon as he could". He also testified that he rang the bell continuously from the time he first saw the automobile until he reached the intersection, but that he did not slacken the speed of the streetcar from the time he first saw the automobile until the streetcar had reached the intersection where the accident occurred. On the other hand, plaintiff testified as follows: " . . . when I was about half a block north of 57th street I gave a signal with my left hand to turn. From that time I dropped my hand to stop at the intersection. When I stopped my front wheels were about even with the end of the loading zone. . . . I shifted into low gear and made a signal for a left-hand turn and looked back alongside the automobile and by that time I had started into the intersection. When I looked back I saw the street car. It hadn't entered the intersection of 56th [an entire block to the north]. I proceeded into the intersection, making a signal for a left-hand turn, and then I took my hand in and shifted to second gear and then made the left-hand signal and proceeded to make the left-hand turn across the tracks. . . . . I had almost crossed the track and the rear wheels were just about in the center when I heard a bell ring. . . . When I heard the bell I looked around and saw the street car. It was just a few feet from my automobile. There wasn't time to do anything" then, as it was just an instant until the streetcar struck the automobile. She also testified that, from the time she stopped until she started to make the left turn across the tracks,—except when she shifted gears of the automobile and looked backward—*she was observing a northbound streetcar which was nearing the intersection of Fiftyseventh Street.*

There was evidence adduced with respect to the position and speed of the respective vehicles, which in part tended to support the version of the accident as related by de-

fendant Sherman, as well as evidence which in part supported that given by plaintiff. Two witnesses testified that, while it was traversing the block between Fifty-sixth and Fifty-seventh Streets, the speed of the streetcar was 30 miles an hour,—although, at a former time, one of those witnesses had stated that he had not noticed the speed of the respective vehicles at or about the time of the accident. The testimony of four of the witnesses, as well as that of defendant Sherman, was that the speed of the streetcar was greater than 15 miles per hour. There was also testimony offered by the defendants to the effect that the automobile had been traveling ''parallel'' with the streetcar at the time it was approximately midway of the block north of the intersection where the collision occurred.

The principal contention of the appellants is that plaintiff was contributorily negligent. Or, otherwise stated, they contend that, at or about the time of the accident, the conduct of plaintiff was not that of an ordinarily prudent person, under the same circumstances. ■ However, it is generally conceded that, on approaching an intersecting street, the duties of a streetcar motorman and those of the driver of an automobile which is about to cross the streetcar tracks at such intersection, are reciprocal and that each is required to approach the intersection with due regard for the rights of the other. (*Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 Pac. 500] ; *Shipley* v. *San Diego Elec. Ry. Co.*, 106 Cal. App. 659 [289 Pac. 662].) In that regard it was said in the case entitled *Aungst* v. *Central California Traction Co.*, 115 Cal. App. 113, 116 [1 Pac. (2d) 56] : '' . . . 'that where both street car companies and automobiles have the right to use the public street, the right of each must be exercised with due regard to the rights of the other, and in such a manner as not unreasonably to infringe upon the rights of the other'. 'While street cars must run upon the tracks provided for them, they have no absolute or pre-eminent *right of way over intersections,* but must use the same with due regard to the safety and rights of the general public.' (*O'Connor* v. *United Railroads,* 168 Cal. 43 [141 Pac. 809].) '' (Emphasis added.)

■ In support of her contention that, as a matter of law, her conduct in the premises could not properly be declared to constitute contributory negligence, respondent directs attention to that which was said in the case entitled

*Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604, 611 [93 Pac. 677], as follows: " 'It cannot be said that a person is guilty of contributory negligence merely because he attempts to cross a street-railway when a car is approaching. If that were so, he could never attempt to cross such a track in the crowded parts of a city where there is practically always an approaching car; and in such case, as street-cars go at a comparatively low rate of speed and are quickly stopped, the question of negligence would depend on the proximity or remoteness of the car, and upon all the other circumstance surrounding the occurrence. In such a situation the traveler cannot be held to exercise the very highest prudence and judgment; it is sufficient if he exercises that degree of care and prudence and good sense which men who possess those qualities in an ordinary or average degree exercise.' . . . ''

The case entitled *Bate* v. *Los Angeles Ry. Corp.*, 30 Cal. App. (2d) 604 [86 Pac. (2d) 856], involved an accident which occurred between a streetcar and an automobile at an intersection in a business district. There, also, according to his testimony, the plaintiff, who was traveling in a northerly direction, made a left turn across the streetcar tracks, after he had seen a southbound streetcar approaching about two-thirds of a block away, and where there was other traffic at the intersection which called for the attention of the driver of the automobile. In that case the court said:

''The issue of alleged contributory negligence of the driver of an automobile is ordinarily to be left to the determination of the jury and it may not be taken from the jury by the court if the circumstances in evidence are such that reasonable minds might differ on the issue. Mr. Bate entered the intersection first and he had the right to assume that the motorman of the street car would obey the law and operate the car in a proper manner. The law permitted him [Mr. Bate] to make a left turn if he could do so 'with reasonable safety' (Vehicle Code, sec. 544) . . . The jury might reasonably have concluded that an ordinarily prudent driver would have made the turn as did Mr. Bate. He noticed nothing unusual about the operation of the car but even if he had noticed its undue speed, as stated in *Runnels* v. *United Railroads*, 175 Cal. 528, 532 [166 Pac. 18], 'he was not in law bound to believe that the car though traveling at undue speed when he saw it one-half a block

or more away, would continue to violate the law and not check its speed as it drew near an intersecting street'. . . . We know of no rule which makes the act of the driver of an automobile in going in front of an approaching car negligence as a matter of law *regardless* of the attendant circumstances. On the contrary *it has been frequently held that in such cases the issue of negligence of the operator of the automobile ordinarily should be submitted to the jury.* (*Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 Pac. 677] ; *Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131 [85 Pac. 152, 5 L. R. A. (N. S.) 1059] ; *Cowan* v. *Market Street Ry. Co.*, 8 Cal. App. (2d) 642, [47 Pac. (2d) 752] ; *Hoff* v. *Los Angeles Pac. Co.*, 158 Cal. 596 [112 Pac. 53] ; *Ring* v. *Los Angeles Ry. Corp.*, 116 Cal. App. 93 [2 Pac. (2d) 404] ; *Commonwealth Bonding etc. Co.* v. *Pacific Railway Co.*, 42 Cal. App. 573 [184 Pac. 29].) The words of the court in *Ross* v. *San Francisco-Oakland T. Railways Co.*, 47 Cal. App. 753, 759 [191 Pac. 703], are appropriate in the present situation: 'But a traveler may cross an electric street railway track in front of an approaching car which he sees and hears and not be negligent. If in view of his distance from the car, the rate of its speed, and all other circumstances of the event, a reasonably prudent man would accept the hazard and undertake to cross the highway, a traveler may do so, and the propriety of his conduct *is ordinarily a question for the jury.*' . . . " (Emphasis added.)

In the instant case, as in the Bate case, plaintiff was traveling at a moderate rate of speed. If, in accordance with her testimony, it was true—and the jury believed it was—that a very short time before she attempted to make the turn into the intersection, she had observed the streetcar a block away from her, she could not have been charged with the knowledge that it might travel the length of the next block at a high or unlawful rate of speed. Under the facts of this case, the jury might well have found that plaintiff reasonably could have relied on the belief that the streetcar was traveling at a lawful rate of speed, and that there was no danger to be expected from a streetcar which was a block away at the time when plaintiff was preparing to make the left turn. Whether she acted reasonably under those circumstances was a question of fact for the jury.

■ As was said in the case entitled *Seller* v. *Market-Street Ry. Co.*, 139 Cal. 268, 271 [72 Pac. 1006], it is rarely that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence has been shown. And it frequently has been declared by the appellate courts of this state that negligence is a question of fact for the jury even where there is no conflict in the evidence, if reasonable men might differ on the question whether the particular acts and circumstances shown to have been present in the case did in fact constitute negligence. (*Jansson* v. *National Steamship Co.*, 189 Cal. 187 [208 Pac. 90]; *Wahlgren* v. *Market Street Ry. Co.*, 132 Cal. 656 [62 Pac. 308, 64 Pac. 993]; *Carlson* v. *Cucamonga Water Co.*, 7 Cal. App. 382 [94 Pac. 399]; *Burr* v. *United Railroads*, 163 Cal. 663 [126 Pac. 873]; *Kimic* v. *San Jose-Los Gatos etc. Ry. Co.*, 156 Cal. 379 [104 Pac. 986].)

■ But, as hereinbefore has been indicated, in the instant case, the evidence was conflicting in each of several material particulars and the jury was entitled to believe either the evidence adduced on behalf of the defendants, or that which was offered by plaintiff. (*Hinkle* v. *Southern Pac. Co.*, 12 Cal. (2d) 691 [87 Pac. (2d) 349].) If the jury believed that defendant Sherman was traveling at a rate of speed in excess of 15 miles an hour,—and according to his own testimony he was so traveling—the defendants' negligence was established. The violation of an ordinance or statute is negligence *per se*. (*Hurtel* v. *Albert Cohn, Inc.*, 5 Cal. (2d) 145 [52 Pac. (2d) 922]; *Kellner* v. *Witte*, 133 Cal. App. 231 [23 Pac. (2d) 1045].) Not only did defendant Sherman testify that the streetcar was traveling at a rate of speed which, it was evident, was prohibited by the ordinance, but also that he was watching the automobile from the time he first saw it to "see what move it was going to make", and that he *did not slacken the speed* of the streetcar while he was watching the automobile,—although it was shown that during that time he was operating the streetcar through a business district of the city, and was about to approach an intersection, immediately beyond which was a school zone.

■ The record herein shows that the trial court denied the motion for a directed verdict on the ground that there was a sufficient conflict in the evidence for the case to go to the jury. There was no error in that ruling. On the other hand, what was said by this court in the recent case

entitled *Hinkle* v. *Southern Pac. Co.*, 12 Cal. (2d) 691 [87 Pac. (2d) 349], is applicable here: "As often happens in cases of this character, the evidence with reference to the accident was sharply conflicting and the testimony of the witnesses for the appellant, not being reconcilable with the testimony of the respondents and their witnesses, it was necessary for the jury as triers of fact, to determine which of the contrary versions of the accident should be accepted as true. It is self-evident that the jury accepted as true the testimony of the respondents, and necessarily rejected a portion, at least, of the evidence proffered by appellant. It follows that it is incumbent upon this court upon appeal to accept as true the evidence in favor of respondents and to resolve all conflicts in the evidence in their favor."

■ The appellants also contend that the trial court erred in instructing the jury that the provisions of the city ordinance were applicable to a streetcar operated by appellant corporation upon its own private right of way. In that regard, it may be noted that in the case entitled *Simoneau* v. *Pacific Elec. Ry. Co.*, 166 Cal. 264, 269 [136 Pac. 544, 49 L. R. A. (N. S.) 737], it was said: "It is, of course, well settled that a city may by a general municipal ordinance prescribe reasonable conditions and regulations under which street railroad companies shall operate their cars *over or across* the streets of a city, including the rate of speed, . . . " (Emphasis added.) Ordinances regulating the speed of trains and streetcars within city limits are proper police regulations, made in the interests of the general welfare. (See *Switzler* v. *Atchison etc. Ry. Co.*, 104 Cal. App. 138, 152 [285 Pac. 918].)

■ Appellants make the further contention that the streetcar tracks herein concerned are utilized for "interurban" streetcar service and that since the right of way on which they are laid is unpaved (except at street intersections) and therefore is open to other vehicular traffic only at such intersections, the "stop, look and listen" rule of caution pertaining to a steam railroad should have been applicable to respondent herein. Although the streetcar was operated between the city of Los Angeles and the city of Huntington Park, it appears to have been operated as an ordinary streetcar which made local stops while traveling through the city. However, the question whether the rule was applicable does not become material, in the instant

case, in view of the fact that, according to her testimony, when plaintiff reached the intersection and was about to make the left turn, she *did* stop and look, and that at that time she *saw* the streetcar (a block away).   Plaintiff further testified that after she had given the signal for a left turn, her attention was taken up with traffic approaching from the opposite direction.   As was said in *Callet* v. *Central California etc. Co.,* 36 Cal. App. 240, 246 [171 Pac. 984] :   " 'The fact that the driver of such [a] vehicle, after looking back and not seeing any approaching car, failed to again look back during an interval in which he drove a distance of about 500 feet, did not constitute negligence *per se.*' "   And in the case entitled *Hansen* v. *Market Street Ry. Co.,* 64 Cal. App. 426, 431 [221 Pac. 955], it was said that " 'The failure of a person to look or listen for an approaching car before crossing a street car track *in a city* is not always, and under all circumstances an act of negligence.' "   (Emphasis added.)   Again, in the case entitled *Hamlin* v. *Pacific Elec. Ry. Co.,* 150 Cal. 776, 780 [89 Pac. 1109], the court said : "Manifestly it is impossible for one driving a vehicle along a street to look in both directions at once, and it should ordinarily be left to the jury to determine, under the circumstances of each particular case, what amount of vigilance was requisite in order to constitute due care."   (See, also, *Babcock* v. *Pacific Gas etc. Co.,* 120 Cal. App. 218, 222 [7 Pac. (2d) 736].)   Obviously, the purpose of the rule—that is, to cause plaintiff to become aware of any possible danger which might exist from the fact that an interurban car or train was approaching and in close proximity to her—was completely accomplished through the fact that after stopping her automobile and looking in the direction from which the streetcar of the defendant was approaching the intersection, she not only *saw* the streetcar, but also at the same time made an estimate of its distance from the intersection and the rate of speed at which it was traveling.   In other words, plaintiff's error, if any, consisted not in a failure to observe that the streetcar was approaching the intersection, but in the making of a poor estimate as to its speed and distance.

The final contention made by appellants is that the court erred in instructing the jury on the doctrine of "last clear chance".   It is not improper to instruct the jury on the doctrine of "last clear chance" when, on any valid

theory, there is substantial evidence to support the application of that principle. (*Gardini* v. *Arakelian,* 18 Cal. App. (2d) 424, 430 [64 Pac. (2d) 181].) In the case entitled *Wheeler* v. *Buerkle,* 14 Cal. App. (2d) 368, 373 [58 Pac. (2d) 230], it was said that "if the facts of a case do not bring the doctrine into play the court must so decide", and if the facts be such that the doctrine *may be applied,* it is the duty of a trial judge to submit it to a jury by proper instructions, or to find upon it in the absence of a jury. Upon the state of the record herein presented, it cannot properly be said that the trial court erred in instructing the jury thereon. As was said in the case entitled *Keena* v. *United Railroads of S. F.,* 57 Cal. App. 124, 129 [207 Pac. 35], wherein it was contended that instructions on the doctrine should not have been given: "There was a conflict in the evidence and the jury were entitled to be advised as to the law and then to believe the plaintiff's witness, or witnesses, or to believe the defendant's witness."

We find no error in the record with respect to either the giving of certain instructions objected to by the appellants, or in the refusal to give certain others requested by them.

The judgment is affirmed.

Rehearing denied.