[Civ. No. 14132. Second Dist., Div. Three. Mar. 24, 1944.]

W. L. BUSH, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

Charles L. Nichols and A. B. Monk for Respondent.

WOOD (Parker), J.—Defendant appeals from an order granting plaintiff's motion for a new trial.

The action was to recover damages for personal injuries suffered by plaintiff, a pedestrian, when he was struck by one of defendant's streetcars in the city of Los Angeles. The court, at the close of the evidence and upon defendant's motion, directed a verdict in favor of defendant. The court granted plaintiff's motion for a new trial upon the ground that the evidence was insufficient to sustain the verdict. Defendant contends that plaintiff was guilty of contributory negligence as a matter of law, and therefore the court erred in granting plaintiff's motion for a new trial.

The accident occurred about 5:30 p. m., after dark, on December 27, 1941, in the marked pedestrian crosswalk immediately south of the intersection of Virgil Avenue and Santa Monica Boulevard. Virgil Avenue extends north and

south; Santa Monica Boulevard extends east and west; but they do not cross at right angles. There is a jog in Virgil Avenue at the intersection. Virgil Avenue at the north of the intersection extends farther east than Virgil Avenue at the south of the intersection—the northwest corner projecting about 55 feet farther east than the southwest corner, and the northeast corner projecting about 51 feet farther east than the southeast corner. Santa Monica Boulevard is approximately 60 feet wide. Virgil Avenue, at the south pedestrian crosswalk, is approximately 94 feet wide from the west curbline to the east curbline, and at the north pedestrian crosswalk is approximately 89 feet wide. The west rail of the southbound streetcar track on Virgil Avenue north of the intersection is approximately 21 feet east of the northwest corner curbline, and the west rail south of the intersection is approximately 59 feet east of the southwest corner curbline; in other words, the northwest corner of the intersection was closer to the rails than the southwest corner, and the rails extended diagonally, from northeast to southwest, across the intersection. (Exhibit 1, introduced by the plaintiff and reproduced by photostat at page 20 of the transcript presents a picture of the intersection.) It was stipulated that the intersection was controlled by "semaphore signals and during darkness by red and green lights."

Plaintiff was 75 years of age at the time of the accident, was wearing dark clothing, and carrying a cane which was "partially painted white." He had had two cataract operations in 1941. Plaintiff had been to a theater and was walking to his daughter's home which was in that vicinity.

The evidence, in the view most favorable to plaintiff, shows that: The "weather was dry," and the intersection was lighted. When plaintiff arrived at the southwest corner of Santa Monica Boulevard and Virgil Avenue he waited for the traffic light to change to green to permit him to proceed east across Virgil Avenue. After the light changed to green, permitting pedestrians to cross Virgil Avenue, plaintiff stepped from the curb into the pedestrian crosswalk south of the intersection, waited for an automobile on Santa Monica Boulevard to make a right turn in front of him onto Virgil Avenue, then looked to his left for traffic and saw none but he did see the headlight of defendant's streetcar, and it appeared that the streetcar was in "a state of rest" at the northwest corner of the intersection headed south. He then proceeded to cross Virgil Avenue in

an easterly direction. He "walked briskly with the aid of a cane." When he arrived at a point about "midway of the track," he "began looking to the right" for northbound traffic "because the first movement" of traffic "would be across" in front of him if he "wasn't across before the signal changed." When he was on the west rail of the southbound track, he heard the "gong" of the streetcar ring, and he looked up and saw the streetcar very close to him— it seemed "not over 15 feet away." He was afraid he "was going to be trapped," and he "hurried forward." As he was stepping off the east rail of the southbound tracks, with his left foot off, his right leg was struck by the left front fender of the streetcar, and he fell to the pavement, sustaining the alleged injuries. Two northbound automobiles were waiting at the southeast corner of Virgil Avenue for the traffic light to change to green. Plaintiff traveled approximately 59 feet from the time he left the southwest curb to the time he stepped on the southbound track, or approximately the same distance as the width of Santa Monica Boulevard, and was at all times within the marked pedestrian crosswalk. Previous to the accident the streetcar was traveling south on Virgil Avenue, and stopped at the northwest corner to take on passengers and wait for the green light to permit northbound and southbound traffic to cross Santa Monica Boulevard. The motorman testified that after the green light came on he waited until two trucks on Santa Monica Boulevard "which would obstruct my [his] vision" had cleared the intersection, and then he started the streetcar across the intersection. The motorman did not see plaintiff until plaintiff was "about 10 feet away, going east from west on Santa Monica in the pedestrian zone," at which time the streetcar was traveling 10 or 12 miles an hour. The motorman "rang the gong" and applied the brakes, and the streetcar "traveled approximately 25 feet" before "it came to a standstill." It was "just a matter of seconds" from the time the bell was rung until the plaintiff was struck.

The sole question to be considered upon appeal is whether plaintiff was guilty of contributory negligence as a matter of law, as defendant contends. ■ Contributory negligence is a matter of law only when from the facts reasonable men can draw but one inference. (*Costerisan* v. *Los Angeles Railway Corp.* (1942), 50 Cal.App.2d 143, 145 [122 P.2d 598].) ■ Viewing the evidence most favorably to plaintiff,

it cannot be concluded that reasonable men could draw but one inference in the present case. "It cannot be said that a person is guilty of contributory negligence merely because he attempts to cross a street-railway when a car is approaching. If that were so, he could never attempt to cross such a track in the crowded parts of a city where there is practically always an approaching car; and in such case, as street-cars go at a comparatively low rate of speed and are quickly stopped, the question of negligence would depend on the proximity or remoteness of the car, and upon all the other circumstances surrounding the occurrence. In such a situation the traveler cannot be held to exercise the very highest prudence and judgment; it is sufficient if he exercises that degree of care and prudence and good sense which men who possess those qualities in an ordinary or average degree exercise." (*Wright* v. *Los Angeles Ry. Corp.* (1939), 14 Cal.2d 168, 174 [93 P.2d 135]; *Scott* v. *San Bernardino Valley Etc. Co.* (1908), 152 Cal. 604, 611 [93 P. 677]; *Clark* v. *Bennett* (1899), 123 Cal. 275, 278 [55 P. 908].) Plaintiff was within a marked pedestrian crosswalk where he had a right to be. He had entered the crosswalk, and attempted to cross the intersection while the traffic light was in his favor. The evidence shows that he had looked to his left for traffic at least twice—once as he stepped from the curb and waited for an automobile to make a right turn in front of him, and again when he observed the light of the street-car across the intersection. Whether plaintiff was sufficiently vigilant under the circumstances was a question upon which reasonable minds might differ. In the case of *Watkins* v. *Nutting* (1941), 17 Cal.2d 490 [110 P.2d 384], the court said, at page 495: "Where, as in the present case, there is evidence that the injured person looked, but either did not see the approaching automobile, or saw it and misjudged either its speed or distance, the question whether, under the particular circumstances then existing, he was guilty of contributory negligence is one of fact." It was stated in the case of *Schneider* v. *Market Street Ry. Co.* (1901), 134 Cal. 482 [66 P. 734], at page 488: "[I]t falls within the province of the jury not only to determine the facts constituting negligence, but also the question as to what would be the conduct 'of a person of ordinary prudence' under similar circumstance,—which, commonly, is a question of fact, not of law." (See also *Sanker* v. *Humborg* (1941), 48 Cal.App.2d 203, 204 [119 P.2d 431].)

Defendant contends that there was no substantial con-flict in the evidence in reference to contributory negligence, and therefore the order granting a new trial should be re-versed. The record shows the evidence was substantially conflicting in several respects, i.e.: (1) as to where plaintiff was when the motorman first rang the bell; (2) as to the speed of the streetcar at that time; (3) its proximity to plaintiff; (4) as to what point plaintiff had reached when the impact occurred; (5) the rapidity of plaintiff's walk; (6) as to whether he increased his speed after the ''gong'' sounded; and (7) as to the visibility at the intersection at the time of the accident. These conflicts were material and relevant to the question of contributory negligence, and pre-sented questions of fact which should have been presented to the jury. It was stated in the case of *Ross* v. *San Fran-cisco-Oakland T. Railways Co.* (1920), 47 Cal.App. 753, at page 759 [191 P. 703]: ''But a traveler may cross an electric street railway track in front of an approaching car which he sees and hears and not be negligent. If, in view of his distance from the car, the rate of its speed, and all other circumstances of the event, a reasonably prudent man would accept the hazard and undertake to cross the highway, a traveler may do so, and the propriety of his conduct is or-dinarily a question for the jury.'' When a judgment is attacked as being unsupported, the power of the appellate court is limited to a determination of whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. ''[I]n a reviewing court all intendments are to be indulged in to support the action of the trial court in passing upon a mo-tion for a new trial. When the question of the propriety of the trial court's ruling on the motion is open to debate, it will not be disturbed. . . . Unless the action of the trial court in granting the motion for a new trial constituted an abuse of discretion, the appellate tribunal is without power to interfere.'' (*Mazzotta* v. *Los Angeles Ry. Corp.* (1944), *(Cal.App.) [145 P.2d 662].) There was no abuse of discretion by the trial court.

The order granting plaintiff's motion for a new trial is affirmed.

Desmond, P. J., and Shinn, J., concurred.

*Hearing in Supreme Court granted April 6, 1944.