[Civ. No. 14940.   Second Dist., Div. Three.   Feb. 27, 1946.]

MONROE E. HUBBELL, Respondent, v. ROBERT
EUGENE CLINK et al., Appellants.

Richard H. Cantillon and John E. Glover for Appellants.

A. Wm. Christlieb for Respondent.

DESMOND, P. J.—In an action for damages for personal injuries sustained as a result of being struck by defendant Robert Clink's automobile, plaintiff recovered from him and his parents a judgment in the sum of $3,661, together with costs in the sum of $32.90. The action was tried by a court sitting without a jury. At the time of the accident Robert was a minor, 20 years of age, living with his father and mother who had signed his application for a driver's license. The appeal is from the judgment and the only assignment of error is that the trial court's finding that plaintiff was not contributively negligent is unsupported by the evidence. It is claimed that the evidence establishes as a matter of law that he was contributively negligent.

The accident occurred in Los Angeles on Glendale Boulevard, July 12, 1940, about 8 o'clock p. m., just north of the point where the Sunset Avenue viaduct crosses that boulevard near Reservoir Street and approximately opposite an alley opening upon it. Glendale Boulevard passes under the viaduct in a northeasterly direction, but opposite the alley curves and extends in a northerly direction. At this point the boulevard is divided into two distinct halves by a Pacific Electric right-of-way. We are concerned only with that portion of Glendale Boulevard which lies east of the private right-of-way, and for purposes of this opinion shall refer to the easterly half as Glendale Boulevard. It is 43 feet, 6 inches in width. On the easterly portion of its right-of-way the Pacific Electric maintains a paved streetcar passenger loading zone for traffic going in a northerly direction. There is no marked pedestrian crosswalk on Glendale Boulevard at the place where respondent undertook to cross. This is a 25-mile speed limit zone and at the time of the accident it was a poorly lighted section, there being but one light over the passenger loading zone "high above a pole." Robert Clink, at the time of the accident, was driving his Ford automobile in a northerly direction on Glendale Boulevard. The plaintiff, the court found, "was at or near the streetcar loading zone" approximately opposite No. 1316 on said Glendale Boulevard, and

that "the defendant Robert Eugene Clink did so negligently, recklessly and carelessly drive, propel, operate and control said Ford automobile as to cause the same to jump the curb, travel upon said streetcar loading zone, and to strike the plaintiff and knock him to the street thereby inflicting injuries upon the plaintiff. . . ." After the accident the automobile came to rest with its right front wheel in the gutter and its left front wheel "upon the curb of the Pacific Electric right-of-way safety zone." It was headed in a northerly direction. There were but two eyewitnesses to the accident, the plaintiff and the driver defendant, and their testimony as to how and where the accident occurred presented a sharp conflict, as hereinafter appears.

Plaintiff testified that at the time of the accident he was 69 years of age; that he had transferred from the Sunset streetcar line and was to take a Glendale Boulevard car; that he had walked through the alley, which leads from Sunset Boulevard to Glendale Boulevard, and when he reached the sidewalk there he "looked up the street," and saw two cars coming from the south, headed in a northerly direction, and waited for them to pass; that he then started to walk across the street toward the Pacific Electric passenger loading zone; that he "could see the traffic going across [a street south of the viaduct], and the headlights that were waiting on Glendale Avenue. . . . There were cars lined up waiting for the traffic signal to change. . . . I walked across the street and stepped up on the pavement, and turned to look at the bench to see if any one was waiting there, and immediately I heard a screech of brakes, whistle of rubber on the pavement" and was then struck on the left by defendant's automobile. "I was thrown, pitched forward, and it seemed like I was caught somewhere, because I lay on my back on the top of the pavement. A jerk on my feet gave me a turn, and I went off into the street." On cross-examination, he stated that he had just stepped up on the top of the drain [located in the passenger loading zone] when he was struck, and the following questions were asked by defendants' attorney: "Q. How long had you been standing there before you were struck? A. I just stepped up there. Q. You had both feet up there? A. Yes. Q. You recall that distinctly? A. I stepped up there and turned to look at the benches. . . . Q. . . . do you remember whether or not you had both feet on the drain? A. Yes. . . . Q. And the benches, I take it, were north of the drain. So that after

you stepped up on the drain and had both feet there, you turned in a northerly direction and looked at the benches, and right after that you turned and were struck? . . . A. Yes. Q. Now, can you tell me how far in feet that drain cover is north of where the curb curves there? A. 12 or 13 feet; something like that. . . . Q. Was there a car coming at the time you crossed the street? I mean, street car? A. There was not. . . . Q. Any people seated on the benches? A. No. Q. Now, when you crossed the street there, did you walk at an ordinary pace or did you run? A. I did, just an ordinary walk. . . . Q. Well, when you had gotten about across the street, which way were you looking? A. Well, I looked to my left. I saw the cars coming until they came to the bridge, and I was practically across the street then, before they entered underneath the Sunset bridge. Q. When you were out, partly out in the street, you looked down to the left and saw some cars coming through or waiting at the bridge? A. They were below the bridge. . . . Q. Then after that did you see any cars after they were south of the bridge? A. Just as they were coming through under the bridge. Q. So that the last you saw of any cars was when they were under the bridge? A. When they were there, I stepped up on the curb.''

When the cause was reopened for further testimony, the plaintiff was asked by the court: ''Mr. Hubbell, do you remember where you were when he struck you? I mean, were you in the street or on the curb? A. I had stepped up on the curb. Q. Were both feet on the curb? A. Yes, sir. Q. Both feet? A. Quite sure. I turned to look at the bench were the people stopped and waited for cars if there had been one there. Q. Do you remember testifying in the other hearing that at the time the car struck you you were nearly across the street when you were struck? A. I don't remember having said that at any time. I was nearly across the street when I saw the cars coming through under the bridge. . . . And as they came under the bridge I was nearly across the street, one step or two to take, and I stepped up on the curb.''

Defendant Robert E. Clink testified that he was travelling north on Glendale Boulevard at approximately ''20 or 25, or 30'' miles an hour, ''not over that''; that just ahead of him and to the right was a Chevrolet Coupe going approximately the same speed as he; that he first saw plaintiff when he ''passed the front end of this Chevrolet''; that he ''was to the left of the Chevy, just a foot or so—I couldn't say

exactly, but just to the left, to the left of the Chevy''; that he started to apply his brakes, swung his car to the left and hit the plaintiff who was ''running'' at the time he first saw him. This witness stated further that when his car struck the plaintiff the latter ''was about five or six feet to the right of the center curb . . . where the P. E. right-of-way and loading zone starts.'' He further stated that only his right fender and right headlight were damaged and that after the accident he drove his car home. On cross-examination he stated that plaintiff was approximately 45 feet away from him when he first observed him; that some time after the accident he examined his skid marks and they were ''approximately 45 feet.''

Officer Orin E. Slafter, assigned by the Traffic Enforcement Bureau to investigate traffic accidents, testified that he arrived at the scene at 8:40 p. m.; that he observed plaintiff lying in the street, being 10 feet east of the east curb line of the Pacific Electric right-of-way, i. e. the westerly curb line of Glendale Boulevard; that the automobile had its right front wheel in the gutter and the left front wheel over the curb on the passenger loading zone; that he noticed a skid mark— one skid mark made by the right rear wheel and that it was ''49 feet . . . from the point where the wheel started to skid until the car came to rest on the curb; 14 feet, the length of the car to the rear wheels, and from there back 49 feet.'' This witness further testified that although he did not talk to the driver of the car, he overheard a conversation between his partner and the driver. ''My partner asked him how far away he was when he first saw this pedestrian. He said he was approximately 80, around 70 to 80 feet. My partner asked him to point out where it was that he saw this man for the first time, and he walked back towards the over-post at Sunset Boulevard, and stood at the point, which we measured to the approximate point, and it measured 84 feet. We asked him how fast he was traveling, and he said he was traveling between 20 and 25 miles per hour; that he had just started up from the traffic signal at Park Avenue, there at the corner of Angelus Temple, and that the person he struck ran out towards him, ran diagonally across the street to catch the street car that was coming from behind him; that as soon as the man entered the street he started to apply his brakes and that he swerved his car to the left to avoid hitting the pedestrian, and that the right front wheel of the car struck

the pedestrian." This officer testified that as a result of his experience as a traffic investigator, he was able to determine from the length of the skid mark that the automobile was traveling "in excess of 32 miles per hour." On cross-examination this witness denied that the plaintiff had said at one time that "he was running across the street; he said he was crossing the street to catch a street car." In fixing the point of impact, the witness placed it "to the right and forward of where the car was standing," and that plaintiff was "lying 10 feet to the right of the front wheel . . . in a northerly direction on Glendale Boulevard." On redirect examination, the witness was asked, "By point of impact, you mean where the car stopped; is that what you referred to? A. No, sir, the point of impact was determined by the debris in the street; that is, the mud and dirt from the bottom of the fender, and the headlight glass. . . . That point was 10 feet to the east of the Pacific Electric right-of-way curb line, and 14 feet to the north."

█ In our opinion there is sufficient substantial evidence furnished by the record to support the court's finding that plaintiff was not contributively negligent, without reviewing other evidence introduced at the trial by both sides, which is merely cumulative. █ The question of contributory negligence of a plaintiff is ordinarily one for the determination of the trial court as a trier of fact. It becomes a question of law "only when the evidence is of such a character that it will support no other legitimate inference." (*Couchman* v. *Snelling* (1931), 111 Cal.App. 192, 195 [295 P. 845]; *Fuentes* v. *Ling* (1942), 21 Cal.2d 59, 61-62 [130 P.2d 121]; *Lang* v. *Barry*, 71 Cal.App.2d 121 [161 P.2d 949].) If, however, "evidence is introduced relative to the degree of requisite vigilance, and the inferences therefrom are honestly debatable, it becomes a question of fact" (*Lang* v. *Barry*, *supra*, p. 125). █ The most that can be said in the instant case is that the evidence is in such a state that reasonable minds might differ upon the question of plaintiff's contributory negligence. There was a conflict in the evidence upon the exact point of impact. Plaintiff testified that he already had both feet on the passenger loading zone when the automobile struck him; defendant driver testified that when his car struck plaintiff he was 5 or 6 feet from the right-of-way curb; the investigating officer, not an eyewitness, placed the point of impact as approximately 10 feet east of the right-

of-way. From these different versions the court was justified in finding that the plaintiff was ''at or near'' the streetcar loading zone when he was struck. ▮ Whether respondent, having made a survey of approaching traffic before he attempted to cross Glendale Boulevard and having yielded the right of way to two vehicles approaching from the south, and being aware that other oncoming traffic was held back by traffic signals, acted as a reasonable man would under the circumstances and exercised reasonable care in keeping a proper outlook, where questions of fact for the court to determine and the same having been resolved in favor of the respondent, we are without authority to disturb the judgment.

Judgment affirmed.

Shinn, J., and Wood, J., concurred.