[Civ. No. 13827.   First Dist., Div. Two.   Apr. 2, 1949.]

LESTER PEDERSON, Respondent, v. CHARLES H. CARRIER et al., Appellants.

Donald Seibert, Hadsell, Sweet & Ingalls and Sydney P. Murman for Appellants.

Elmer P. Delany and Wm. A. Sullivan for Respondent.

DOOLING, J.—In an action for personal injuries occasioned by his being struck by an automobile driven by one defendant while acting as the employee of the other, plaintiff was awarded $45,000 by the verdict of a jury. A motion for new trial was denied and defendants appeal from the judgment. The sole ground presented on the appeal is that the amount awarded is excessive.

At the time of the casualty plaintiff was 48 years old with an average life expectancy of 22.88 years. (58 C.J.S. 1212.) He had previously been committed to Napa State Hospital for insanity and was discharged in 1937. Following this discharge he worked as a counterman in a San Francisco cafeteria and later as an electrician's helper. That he was somewhat emotionally unstable is indicated by evidence of temporary periods of hospitalization for minor injuries and intoxication, but between the time of his discharge from Napa State Hospital in 1937 and the date of his injuries which are the subject of the present action he had no recurrence of insanity necessitating his commitment to a state institution.

The injuries for which the verdict was awarded consisted of a severe fracture of the right femur just below the hip joint causing a permanent shortening of the leg by an inch and a half and a recurrence of insanity which necessitated his being committed again as a patient to a state institution. The fracture of the hip joint was reduced by driving a wire through the lower end of the bone to which was attached weights, cords and pulleys to give traction in a Thomas splint and the necessary period of hospitalization covered several months. There is a permanent stiffening of the hip joint which considerably reduces normal abduction, adduction and rotation of the leg and while a lift on the shoe will compensate for the shortening of the leg there will be some postural changes which may result in arthritis in the sacroiliac joints, the lower lumbar vertebrae or back from tilting. The injured leg is also somewhat weaker than before.

The evidence of psychiatric experts was that while a normal man would not have been rendered insane by the accident and resulting injuries, with his background of mental instability the plaintiff was mentally more susceptible and his second attack of insanity was brought on by his injuries and the attendant treatment, confinement and suffering. He was committed for insanity about five months after his accident and at the time of the trial, a year and a half later, he was still

confined. He was then greatly improved and the psychiatric experts estimated that if his improvement progressed he might be ready for a trial period on parole from the hospital in from two to six months. After his parole from the hospital he should get some occupation not requiring "too much mental stress and concentration and effort, but something rather of a simple nature and with moderate physical exercise thrown in with it." He will require psychiatric care at least once a week as long as he is on parole with a "50-50 chance that he will carry (the usual loads) without future breaks" but for the unusual ones (hard work, stressful episodes, serious illness or major injury) "the potentialities are there much more than in any average individual, for a rather frank mental breakdown to return once more to a hospital."

The picture before the jury was one of a man who had theretofore earned his living by physical labor, with a permanently crippled, shortened and stiffened leg, who had spent months in a hospital and a year and a half in a state institution for the mentally ill, who in from two to six months might be well enough to undertake light work, and who would always be prohibited from engaging in hard work under penalty of thereby incurring the risk of another mental breakdown.

"The question of what may be reasonable compensation in cases of this kind is a matter on which there legitimately may be a wide difference of opinion" (*Roedder* v. *Lindsley,* 28 Cal.2d 820, 823 [172 P.2d 353]) and for these serious handicaps which the jury were entitled to measure against over 22 years of normal life expectancy we cannot say that the award of $45,000 shocks one's sense of justice and raises the presumption that it was the result of passion and prejudice and unless we can so say our duty is to affirm the award (*Roedder* v. *Lindsley, supra,* 28 Cal.2d 820, 823; *Johnston* v. *Long,* 30 Cal. 2d 54, 76 [181 P.2d 645]). The denial of the motion for new trial by the judge who tried the case and was in a better position to appraise the testimony and determine whether the verdict was excessive (*Johnston* v. *Long, supra,* 30 Cal.2d 54, 76); the fact that plaintiff will be seriously handicapped physically and mentally in a competitive market for physical labor (*Hughes* v. *Hearst Publications, Inc.,* 79 Cal.App.2d 703, 707 [180 P.2d 419]); the serious danger of a recurrence of insanity; and the decreased purchasing power of the dollar, so often referred to by the courts in similar cases in recent years (*Kircher* v. *Atchison, T. & S. F. Ry. Co.,* 32 Cal.2d 176, 187 [195 P.2d 427]), all combine to support the award.

The decreased purchasing power of the dollar renders unpersuasive the cases cited by appellants from the 1930's and earlier, and still less persuasive are the cases in which relatively small awards for serious injuries were affirmed on appeal. As this court said in *Foster* v. *Pestana,* 77 Cal.App.2d 885, 891 [177 P.2d 54]:

"It does not follow that because a plaintiff 36 years ago received a none too generous verdict, the award herein was too generous."

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 26, 1949.