[Civ. No. 17195.   Second Dist., Div. Three.   Mar. 20, 1950.]

EVA E. WELCH, Respondent, v. SEARS, ROEBUCK AND COMPANY (a Corporation) et al., Appellants.

John L. Wheeler, Hanna & Morton and Patrick James Kirby for Appellants.

Harvey, Johnston, Baker & Palmer and A. V. Muller for Respondent.

WOOD, J.—Action for damages for personal injuries sustained by plaintiff, a customer in the store of defendant corporation, when a roll of linoleum fell upon her. The jury returned a verdict in favor of plaintiff for $27,500, and judgment was entered in accordance therewith. In ruling upon defendants' motion for a new trial, the judge made an order, on February 10, 1949, granting the motion upon the grounds of excessiveness of the verdict and insufficiency of the evidence to sustain the verdict, unless the plaintiff, within five days, file a waiver of all portions of the judgment in excess of $15,000, plus costs; and that if such waiver be filed, then said motion for a new trial shall stand denied; otherwise said motion shall stand granted upon the sole issue of damages. On February 14, 1949, the plaintiff filed such a waiver. Defendants appeal from the judgment.

On June 19, 1948, the plaintiff, accompanied by her daughter-in-law, went into the retail store of defendant corporation at San Luis Obispo for the purpose of buying linoleum. Upon entering the furniture department on the second floor, they met the defendant Campbell, a clerk in the store, who went with them to a place on that floor where linoleum was displayed for sale. Adjoining the rear wall at that place, and near a corner of the room, there was a wooden rack in which several rolls of linoleum were standing on end. In front of that wooden rack and about 18 inches therefrom, there were three rolls of plastic linoleum, standing on end, close together so that they "touched," and in "a line" parallel with the wooden rack. Each roll was about 6 feet high, about 1 foot in diameter, and weighed about 300 pounds. Those rolls had been placed there the day before the accident, and that was the first time that that kind of linoleum had been in the store. The wrapping paper which had been on the

rolls had been removed, and there was no "tie" around any of the rolls. The wooden plugs which had been at the ends of the rolls had been removed, and also the wooden plates which had been at the ends of the rolls (attached to the plugs) had been removed. Adjoining the side wall, and near the same corner of the room, and at a right angle to the line formed by the three "free-standing rolls," there was a steel-frame rug rack which was about 5 feet from the roll nearest that rack. The front of that rack was formed by three horizontal steel bars, spaced about 1½ feet apart. Rugs were hanging over the two upper bars of the rack. The clerk showed them the plastic linoleum, in the roll nearest the rug rack, by unrolling about 2 feet of the standing roll. While he was showing that linoleum the telephone rang, and he snapped the 2 feet of linoleum back into the roll and went to the telephone which was about 30 feet away. Plaintiff and the daughter-in-law then went to the wooden rack and looked at linoleum. Then plaintiff went to a place between the roll of linoleum (that the clerk had shown to them) and the rug rack, which place was about 3 feet from the roll. While she was at that place, facing the roll, the roll fell upon her, striking her chest and knocking her down and against the bars of the rug rack. After the roll had fallen, she was in a reclining position upon the floor with her back against the lower bar of the rug rack, and the top part of the roll was upon her chest. About 1 foot of the top part of the roll extended inside the rack, above the lower bar. The daughter-in-law rolled the linoleum off the plaintiff. The clerk came from the telephone and told the daughter-in-law not to move the plaintiff. Then he went to notify the manager of the store. The daughter-in-law and someone assisted plaintiff in arising and going to a divan in the furniture department. About 10 minutes after the accident the assistant manager arrived. He asked plaintiff some questions about the accident and made arrangements for plaintiff to see a physician. Then the daughter-in-law took her in an automobile to the physician's office.

The floor at the place where the rolls of linoleum were standing was covered with inlaid linoleum which had not been waxed. The slope of the floor at that place, toward the side wall and the rear wall, was about ⅛ of an inch in 3½ feet. The stability of the floor at that place was tested by a building contractor and by a building official of San Luis Obispo, who "jumped on the floor," in the area where the

accident occurred. According to those tests, there was no noticeable or appreciable vibration of the floor.

An engineer made a test to determine the amount of pressure that would have to be applied to a roll of linoleum, of the kind, dimensions and weight here involved, standing at said place on the floor, to cause the roll to topple over toward the rug rack. According to the test, 16 pounds would have to be applied at the top of the roll; 19 pounds would have to be applied at a place thereon 5 feet from the floor; 25 pounds at a place 4 feet from the floor; and 33 pounds at a place 3 feet from the floor. He made another test to determine how far the roll, used in the prior test, would have to be tipped from a vertical position before it would fall. According to the test, the roll would have "to be nine inches off center at the top in order to just balance back again; but beyond that it would go over."

The manager of the Montgomery Ward store in San Luis Obispo, who was called as a witness by defendants, testified that it was the general custom of the Montgomery Ward stores, and other stores in California that sell linoleum, to display 6-foot rolls of linoleum "standing" and "unsecured." On cross-examination, he said that such linoleum in the Montgomery Ward stores in San Luis Obispo was generally next to or close to the wall. The manager of the furniture department of defendant corporation testified that it was the custom of that store, during the three years he was employed there, to display rolls of linoleum "free and clear" of the racks.

The manager of the McMahon Furniture Store in San Luis Obispo, called as a witness by defendants, testified that it was the custom in that store to display 6-foot rolls of linoleum in "free-standing positions." On cross-examination he said that in his store rolls of plastic linoleum stand "close to the wall—not against the wall; they expand with heat— it softens them up."

A salesman in the Yours & My Furniture Store in San Luis Obispo, called as a witness by defendants, testified that in displaying 6-foot rolls of linoleum, including plastic linoleum, in the store where he was employed and in the Davidson store and the Clay store in San Luis Obispo, the general custom was to tie a string around the rolls and stand them against the wall or in an aisle. On cross-examination, he said that the purpose in tying a string around a roll was to keep the roll from unwinding; that if there was no string around the rolls they would unwind to a certain extent.

The plaintiff testified that she did not touch the roll of linoleum before it fell on her. The daughter-in-law testified that she (herself) did not touch the roll before it fell on plaintiff, and that she did not see plaintiff touch it before it fell. At the time the defendant Campbell (the salesman) was showing the roll of linoleum to plaintiff and the daughter-in-law, no other person was in the linoleum department. The 8-year-old granddaughter of plaintiff was sitting in the furniture department until after the roll of linoleum fell.

The jury was instructed to the effect that the doctrine of res ipsa loquitur was applicable herein. Appellants contend that said doctrine was not applicable, since the evidence fails to show that defendants had exclusive control of the roll, and since the evidence does not exclude the possibility that the fall of the roll was contributed to by the action of plaintiff, and since it cannot be said that the fall of the roll was more likely than not the result of defendants' negligence. The plaintiff was an invitee in the store. She had no right of control of the linoleum, or any of the merchandise in the store, or any part of the store building. She testified that she did not touch the roll of linoleum at all before it fell. The daughter-in-law testified that she did not see plaintiff touch the roll before it fell. No one testified that plaintiff touched the roll before it fell, and there was no evidence that anyone other than defendant Campbell touched the roll between the time plaintiff arrived in the furniture department and the time the roll fell. No one was in the linoleum department, prior to the fall, other than plaintiff, the daughter-in-law, and defendant Campbell. The roll of linoleum had been placed on the floor the afternoon preceding the accident. It was a kind of linoleum that had never been displayed for sale in the store. It was displayed ''free-standing,'' except that it ''touched'' the middle roll of the three rolls which were in ''a line'' on the floor. There was no ''tie'' around any of the three rolls. There was evidence that a roll of linoleum which was not tied would unwind to a certain extent, and that heat would cause plastic linoleum to expand. The maximum temperature outside the store on the day of the accident was 73 degrees. It is true that the floor was stable, and that its slope was slight. There was no evidence, however, concerning the condition of the base or lower end of the roll from which the wooden plug and plate had been removed. If a considerable force would be required, as shown by the evidence, to

topple a roll that was in a vertical position and on good footing, it might be inferred, in the absence of evidence as to the use of such force and in the event a roll fell, that the roll was not safely balanced. Plaintiff did not allege specific acts of negligence, but alleged general negligence on the part of defendants. The doctrine of res ipsa loquitur was applicable herein. In the case of *Wills* v. *Price*, 26 Cal.App.2d 338 [79 P.2d 406], the plaintiff, a customer in defendant's store, was injured when a 6-foot roll of linoleum, which had been standing on end "at the side" of the room, fell upon her and knocked her down. Plaintiff therein alleged specific acts of negligence as the cause of the accident, namely, the defendants had negligently rolled and stood the linoleum on the floor in such manner that, as a result of the vibration caused by walking across said floor or other vibrations of the building, the linoleum fell upon plaintiff. The court therein said (p. 342) that since general negligence was not alleged, the plaintiff, in order to recover judgment, was required to prove the specific acts of negligence alleged. In that case the plaintiff and her daughter had not noticed particularly any vibration of the floor. The court therein said (p. 343) : "The court, however, had the right to believe Mrs. Wills' statement that she had not touched the roll. If she had not, then, even though respondents were precluded by their pleading from claiming that the roll was so insecurely placed that it could topple over merely from its own weight, and though they were confined to showing that the immediate cause of its toppling over was the vibration of the floor, still the circumstance that no witnesses noticed such vibration would be inconclusive and there would still be room for a limited application of the *res ipsa loquitur doctrine* [citing case] whereby the trial court might have concluded that there had been a vibration of the floor, though there was no other affirmative evidence that such vibration had taken place than such inferences as the *res ipsa loquitur* doctrine might justify."

Appellants also contend that, even if this had been a proper case for the application of the doctrine of res ipsa loquitur, the instructions on that doctrine which were given were erroneous. The court gave the following instructions: "If, and only in the event, you should find that there was an accidental occurrence as claimed by the plaintiff, namely: A roll of linoleum standing on end toppled and fell against plaintiff; and if you should find that from that accidental event, as a proximate result thereof, plaintiff has suffered

injury, you are instructed as follows: an inference arises that the proximate cause of the occurrence in question was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part.

"In making such a showing, it is not necessary for a defendant to overcome the inference by a preponderance of the evidence. Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule just mentioned. It follows, therefore, that in order to hold the defendant liable, the inference of negligence must have greater weight, more convincing force in the mind of the jury, than the opposing explanation offered by the defendant.

"If such a preponderance in plaintiff's favor exists, then it must be found that some negligent conduct on the part of defendant was a proximate cause of the injury; but if it does not exist, if the evidence preponderates in defendant's favor, or if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then the verdict must be for the defendant."

Appellants assert that said instructions were erroneous in that they constituted a direction, as a matter of law, that the doctrine of res ipsa loquitur was applicable and the instructions eliminated any reference to the special circumstances which must be found to exist before the doctrine may be applied. They argue that, if it was proper to give instructions on the subject of res ipsa loquitur, the instruction should have included instructions, requested by defendants, to the effect that before the plaintiff should be accorded the benefit of the res ipsa loquitur inference against a defendant, the jury must find that (1) the injury must be caused by an instrumentality in the exclusive control and possession of the defendant; (2) the injury would not have occurred, ordinarily, unless the defendant had been negligent; (3) the injury must have occurred without contributory negligence

on the part of plaintiff; and (4) knowledge of the cause of the injury must appear more accessible to the defendant than to the plaintiff. In support of their contention that such qualifying instructions should have been included, appellants cite *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514 [203 P.2d 522], in which the injury was caused when a bottle of beer exploded in plaintiff's hand. In that case the same instructions hereinabove quoted were given, and the court therein said (p. 519) : "Standing alone this instruction was erroneous for it omitted reference to the fact that before the jury may accord the plaintiff the benefit of the res ipsa loquitur inference it must believe that the bottle did not suffer damage at the hands of persons other than the defendant." In that case, after giving said instructions hereinabove quoted, the court gave a further instruction to the effect that plaintiff, in order to be entitled to the benefit of said doctrine, must show that every person who moved or touched the bottle after it left the control of defendant did so with due care. The court therein said (p. 520) : "Thus the broad instruction of res ipsa loquitur was followed by qualifying instructions explaining the circumstances which must be present before the inference of negligence can arise, including a charge that the plaintiff must prove that all who dealt with the bottle beside the defendant did so with due care. It is therefore apparent that taken together the entire charge on the subject fairly presented to the jury the element of careful handling and that the erroneous omission of that element from the general instruction was not prejudicial." They also cite *Zentz* v. *Coca Cola Bottling Co.*, 92 Cal.App.2d 130 [206 P.2d 653], which involved a bursting bottle. In that case the court gave the same instructions hereinabove quoted and also gave qualifying instructions, but those qualifying instructions did not include the direction that plaintiff must prove that all who dealt with the bottles besides the defendant did so with due care. The court therein held "that the giving of the general instruction without a sufficient explanatory instruction was prejudicially erroneous." The bursting bottle cases are factually different from the present case. In the bursting bottle cases the bottles had left the control of the defendants (the bottlers) and had been handled and controlled by others. In the present case there was no evidence that the plaintiff or anyone, other than the defendants, touched or controlled the roll of linoleum. One of the instructions herein included the statement, as above shown, that if the jury should find that

there was "an accidental occurrence as claimed by the plaintiff, namely: A roll of linoleum standing on end toppled and fell against plaintiff," an inference arises that the proximate cause of the occurrence was negligent conduct by defendants. It was not necessary herein to give the qualifying instructions referred to by appellants. The jury herein was properly and adequately instructed on the subject of res ipsa loquitur. As to appellants' assertion that the instruction on that doctrine should have been qualified with a further instruction to the effect that the injury must have occurred without contributory negligence on the part of plaintiff, it appears that the court did give an instruction properly defining contributory negligence and stating that one who is guilty of contributory negligence may not recover from another for the injury suffered.

Appellants contend further that the amount of $15,000, awarded as damages, was excessive. Plaintiff sustained three broken ribs. She was in a hospital one month. A physician testified that "She had a lot of pain," and "She had a considerable amount of difficulty, much more than the average person." The plaintiff had heart trouble and arthritis prior to the accident. A physician, who was called as a witness by the defendants, stated in a letter, which he wrote during the time he was treating plaintiff at the hospital, as follows: "The outlook in this case entails the possibility of a long period prior to recovery, as Mrs. Welch [plaintiff], who unquestionably was suffering from heart trouble prior to this accident, has had an added load placed on her heart and this interval of added heart strain will be a real factor in determining how long it will be before she can be discharged from the hospital, and before she will be fully recovered from the effects of the injury." Another physician, who treated plaintiff during a period of approximately 2½ months preceding trial, testified that the twelfth rib was broken about 3 inches from, and was torn away from, the spine; the eleventh rib was "broken in pieces, an inch and a half from the spine"; and that the ninth rib was broken "quite a distance from the spine." He testified further that the twelfth rib condition constitutes a spinal injury; and that the injuries aggravated the arthritis and the heart condition. The medical bills and the hospital bills, to the date of trial, amounted to $1,475. As above shown, the trial judge, in ruling upon defendants' motion for a new trial, reduced the amount of the award from $27,500 to $15,000.

The amount of $15,000 awarded as damages was not excessive.

█ Appellants also contend that the judgment should not have been against defendant Campbell. He was the agent of the defendant corporation in the linoleum department at the time of the accident. According to testimony on behalf of plaintiff, he showed the "free-standing" roll of linoleum to plaintiff by unrolling about 2 feet of it. When the telephone rang, he snapped the 2 feet of linoleum back into the roll and went to the telephone which was about 30 feet away. The evidence was legally sufficient to support the judgment against him.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 18, 1950.