[Civ. No. 17181. Second Dist., Div. Three. May 9, 1950.]

ELLIE WERKMAN, Respondent, v. THE HOWARD ZINK CORPORATION (a Corporation) et al., Defendants; EDITH JONES et al., Appellants.

Moss & Lyon, Henry F. Walker and Spray, Gould & Bowers for Appellants.

Russell H. Pray and Eric A. Rose for Respondent.

VALLÉE, J.—These are separate appeals by defendants The Howard Zink Corporation and Edith Jones from a judgment for plaintiff for $14,385.21 entered on a verdict of a jury in an action for damages for personal injuries. Edith Jones also appeals from an order denying her motion for judgment notwithstanding the verdict.

Defendant Jones was the owner of a parcel of realty in Long Beach. In the rear the property abutted on a public alley. The alley ran east and west. It was about 20 feet wide. In 1947, Jones constructed a building on the property. The building extended to within inches of the north property line of the alley. An overhead garage-type door which opened from the building into the alley was installed. It was 12 feet wide and 10 feet high. It was so installed as to swing into the alley in the opening and closing operation. When open the door rested in a horizontal position above the doorway. Its lower end was then flush with the building and next to the top flight member of the doorway. The door was closed by pressing a spring which was located on the west wall, inside the garage, about ''one foot back inside the west edge of the doorway.'' In the closing operation the lower edge of the door described an arc projecting into the alley a distance of 48 to 50 inches from the north property line at a height of about 6 feet from the concrete pavement of the alley.

At the time the building was constructed and at the time the accident occurred, the Long Beach Building Code provided: ''Doors or swinging windows shall not project nor swing beyond the property line bordering a street or alley. . . . No projection whatsoever shall be allowed in alleys except a curb or buffer block extending not more than nine (9) inches from the face of the building and not more than nine (9) inches above the established alley grade.''

The Howard Zink Corporation leased the building upon its completion and was in possession at the time of the accident.

April 23, 1948, plaintiff, 58 years of age, was employed by a candy company located west of the Jones Building. Her place of employment had a rear exit to the public alley. She left work about 4 p. m. by the rear door, went into the alley and proceeded east toward Pico Street to take a bus between 4:15 and 4:30, which was to take her home. She travelled about 4 feet south of the north property line. She was not in a hurry. She walked her usual pace, rather fast, not slow, looking straight ahead. She was not running. There was

nothing in the alley to obstruct her path. The sun was shining; visibility was good; it was not windy; and the pavement was dry. An employee of The Howard Zink Corporation, about to quit work for the day, pressed the spring to close the door. As plaintiff reached about the center of the doorway on the Jones Building she was hit on the head by the descending door. The impact knocked her to the pavement and she was severely injured.

### Appeal of The Howard Zink Corporation

Defendant The Howard Zink Corporation contends: 1. Plaintiff was guilty of contributory negligence as a matter of law. 2. The verdict was grossly excessive.

A plaintiff is required to exercise only that amount of care which would be exercised by a person of ordinary prudence in the same circumstances. (*Lay* v. *Pacific Perforating Co.*, 62 Cal.App.2d 233 [144 P.2d 395].) The question of contributory negligence is ordinarily one of fact for the trier of fact. (*Hubbell* v. *Clink*, 73 Cal.App.2d 295, 300 [166 P.2d 384].) Contributory negligence is a question of law only when the court can draw but one inference from the evidence, and that an inference pointing unerringly to the negligence of the plaintiff proximately contributing to his injury. (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826].)

The facts related *supra* are stated in a light most favorable to plaintiff. The argument of defendant The Howard Zink Corporation is based on the assertion that ''Plaintiff's version of the facts cannot be accepted without doing violence to reason and common sense.'' That was a question for the jury. It is said that because plaintiff· made extrajudicial statements to the effect that at the time of the accident she was running with her head down, and because the records of the weather bureau noted high winds at Long Beach on April 23, 1948, plaintiff's testimony was false. This and other evidence referred to by defendant did nothing more than create a conflict. Assuming that plaintiff was running with her head down, it does not follow that she was negligent. A person travelling on a public highway, whether walking and looking straight ahead or running and looking down, cannot be said to be negligent as a matter of law because she did not foresee that an overhead door would descend upon her. It cannot be said as a matter of law that plaintiff was guilty of contributory negligence. (*Cf.*, *Donahoo* v. *Kress House Mov. Corp.*, 25 Cal.2d 237, 247 [153 P.2d 349]; *Jacoby* v. *Johnson*,

84 Cal.App.2d 271, 274 [190 P.2d 243]; *Louie* v. *Hagstrom's Food Stores, Inc.,* 81 Cal.App.2d 601, 610 [184 P.2d 708]; *Tschumy* v. *Brook's Market,* 79 Cal.App.2d 556, 561 [180 P.2d 933]; *Miller* v. *Pacific Constructors, Inc.,* 68 Cal.App.2d 529, 546 [157 P.2d 57]; *Bush* v. *Los Angeles Ry. Corp.,* 63 Cal. App.2d 464, 467 [146 P.2d 941]; *Thompson* v. *B. F. Goodrich Co.,* 48 Cal.App.2d 723, 727 [120 P.2d 693].)

 Where there is no showing of passion or prejudice on the part of the jury in arriving at the amount of the verdict, it cannot be said that the amount is excessive as a matter of law. (*Walker* v. *Adamson,* 9 Cal.2d 287, 290 [70 P.2d 914]; *Moran* v. *Zenith Oil Co.,* 92 Cal.App.2d 236, 244 [206 P.2d 679].) No such showing is made. The amount of the verdict was considered and approved by the trial judge on a motion for a new trial. At the time of the accident plaintiff was in excellent physical condition. Her special damages were $1,885.36. She sustained multiple fractures of the left ankle. There were two complete independent fractures: 1. An oblique complete fracture of the lateral malleolus of the fibula (the calf or smaller of the two bones of the leg) with marked posterior displacement of the distal (end) fragment. The distal fragment of the lateral malleolus was displaced slightly lateral-ward and slightly posteriorly. The malleolus is the rounded lateral projection of each bone of the leg at the ankle. 2. A transverse complete fracture of the medial (middle) malleolus of the tibia (the shin or larger of the two bones of the leg) about 1½ or 2 inches above the ankle joint with posterior and downward displacement of the distal fragment. There was a wide separation or gap—about 1 or 1½ inches—of two fragments of bone between the medial malleolus. There was a posterior dislocation of the astragalus at the ankle joint. The astragalus was tilted inward. The astragalus is the proximal or central bone of the foot which receives the weight of the body. All of the ligaments between the ankle joint and the malleolus were torn. The function of the ligaments is to hold the bones in normal apposition, to maintain the foot stable. Plaintiff sustained a laceration in the center of the forehead just within the hairline and another about 1½ inches long at approximately the vortex of the skull. One laceration was completely through the scalp, the other partially through. She was in bed about a month with her foot elevated. She wore a cast for 10 weeks extending from the toe to the knee. She was compelled to walk on crutches for four months. Thereafter she used a cane for three and one-half months. X-ray pictures taken in

November, 1948, showed that one bone had not united. After the accident plaintiff developed a bursitis of her shoulder, i.e., ''an inflammation or irritation of the small fluid-like sac . . . which acts as a guide sac over which the muscles and tendons glide,'' resulting in a para-arthritis, which is a stiffening of the shoulder. She was under the care of a physician from the time of the accident until the trial on January 10, 1949, and had not been able to work during that time. At the time of the trial she was unable to go downstairs normally; if inadvertently she started to, she suffered severe pain. She had to go sideways because she could not bend her ankle. When she reached or tried to lift anything, she had a dull pain in her shoulder and arm. She had headaches occasionally. Some of her headaches felt as if there were a clamp on her head. At times she had ringing noises in her head. This had happened every few days from the time of the accident. She had a sore spot back of her hairline which was sensitive to the touch. She was required to wear an elastic stocking. There was evidence that she sustained these permanent injuries: Alteration of her normal ankle functions; enlargement of the ankle; some stiffness; some discomfort when she uses her ankle in walking considerably; for the rest of her life she will have some pain which will be worse in inclement weather; she will not be able to be on her feet more than two or three hours daily; she will be unable to do work which involves a good deal of walking or standing. The award of $14,385.51 was not excessive. (See *Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 186 [195 P.2d 427] ; *Welch* v. *Sears, Roebuck & Co.*, 96 Cal. App.2d 553, 561 [215 P.2d 796] ; *Pederson* v. *Carrier*, 91 Cal.App.2d 84 [204 P.2d 417] ; *Buswell* v. *City & County of San Francisco*, 89 Cal.App.2d 123 [200 P.2d 115].)

### Appeal of Edith Jones

Edith Jones adopts the points advanced by The Howard Zink Corporation. The only point she argues is that the court committed prejudicial error in refusing to give the following instruction: ''As you have been instructed, one of the questions we must decide in finding whether or not one person is liable for injury to another, is whether or not the conduct in question was a proximate cause of the injury in question. This inquiry may involve the conduct of two or more persons acting independently and at different times. To explain the problem presented by such a situation, I shall refer to the

person whose conduct came first in point of time as the first actor and to the other person as the second actor. If the first actor foresaw, or by exercising ordinary care would have seen, that a second actor probably would conduct himself as the second actor actually did, and also that the combination of the first actor's conduct and the second actor's conduct probably would cause injury to a third person, and if the combined conduct did so result, then each actor's conduct was a concurring proximate cause of that injury—although, of course, neither would be liable unless his conduct was negligent. But if the first actor's conduct alone did not cause the injury, and if a combination of results such as I have mentioned was not foreseen by him as a probability, and was not so foreseeable in the exercise of ordinary care, then the first actor may not be held liable for any injury of which the second actor's conduct was a proximate cause or which now may appear to have resulted from the combined conduct of both.'' (California Jury Instructions—Civil Alternate No. 104-C-1948 Pocket Parts, p. 43.)

Jones says that she contended at the trial that the negligence of The Howard Zink Corporation ''employee, in closing the door, was an intervening or superseding cause and that if there was any negligence on appellant's [Jones'] part it was not a proximate cause of the event.'' She argues that ''whether the act of the employee operated as an intervening cause was a question of fact for determination by the jury under proper instructions,'' citing *Stockwell* v. *Board of Trustees*, 64 Cal. App.2d 197, 204-205 [148 P.2d 405], and ''that the question, whether the negligent act of the corporation's employee was an independent proximate cause of the injury, was a question of fact.'' She says it was prejudicial error to refuse the instruction.

Appellant Jones does not distinguish between an intervening force and a superseding cause. ''An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.'' (Rest., Torts, § 441.) ''A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'' (Rest., Torts, § 440.) A superseding cause relieves the actor from liability; an intervening force does not unless it is a superseding cause. (Rest., Torts, §§ 442-453 and comments thereto.) She also confuses an ''independent interven-

ing cause" and a "dependent intervening cause," as applied to the facts. "An independent intervening cause is one which operates without respect to defendant's cause. It would have been operating when and where it did if defendant's cause was wholly out of the picture. In other words it is a cause which is not caused by defendant's act. . . . A dependent intervening cause is one which is caused by the tortfeasor act. If the intervening act is stimulated or incited by defendant's act it will be dependent, but it need not be stimulated or incited, it is sufficient if it were merely caused by defendant's act." (Carpenter, *Rules For Determining Proximate Cause,* 20 Cal.L.Rev. 484; see, also, Rest., Torts, § 441, comment c.)

The instruction is not a correct statement of the law. It would have told the jury that negligence of Jones was not a proximate cause unless she did foresee, or by the exercise of ordinary care would have foreseen, the identical consequence that happened. There is no question but that Jones was negligent. She constructed the overhead door, knowing that in opening and closing it would extend at least 4 feet into the alley in violation of the ordinance. She leased the building. She knew that the lessee would open and close the door. She permitted the door to remain in that condition to the time of the accident in violation of the ordinance. The wrongdoing of Jones continued to be potentially active until the accident. The question to be decided by the jury was not whether she did foresee, or by the exercise of ordinary care would have foreseen, the identical consequence that happened, in order that her negligence be a proximate cause of the injury. The question was whether it was reasonably foreseeable that injury was likely to occur. Her duty "is measured by the standard of foreseeability of injury to the eyes of a reasonably prudent man having regard for the accompanying circumstances. (*Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 216 [157 P.2d 372, 158 A.L.R. 872]; 1 Shearman and Redfield on Negligence, § 24; Rest., Torts, §§ 284, 289, 290.)" (*Gibson* v. *Garcia,* 96 Cal.App.2d 681, 684 [216 P.2d 119].)

The facts in the case at bar do not involve the conduct of two or more persons acting "at different times," as stated in the instruction. They involve the conduct of two persons acting at the same time. "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or crim-

inal does not prevent the actor from being liable for harm caused thereby.'' (Rest., Torts, § 449.) Foreseeability in causation means foreseeability of intervening cause only; it does not include foreseeability of consequences. (Carpenter, *Proximate Cause,* 16 So.Cal.L.Rev. 280.) A consequence which follows directly either from the defendant's act or from a foreseeably caused intervening act is proximate. (Carpenter, *Proximate Cause,* 16 So.Cal.L.Rev. 18.) A primary act of negligence may be so continuous in its character that it conjoins with an act of negligence committed by another at a later time. (*Cummings* v. *Kendall,* 34 Cal.App.2d 379, 382 [93 P.2d 633].) Where the original negligence continues and exists up to the time of the injury, the concurrent negligent act of a third person causing the injury will not be regarded as a superseding cause; but each of the two concurring acts of negligence will be held to be a proximate cause. (*Lacy* v. *Pacific Gas & Electric Co.,* 220 Cal. 97, 98 [29 P.2d 781]; *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594, 602 [110 P.2d 1044]; *Rae* v. *California Equipment Co.,* 12 Cal.2d 563, 570 [86 P.2d 352]; *Northwestern Nat. Ins. Co.* v. *Rogers etc. Foundry,* 73 Cal.App.2d 442, 444 [166 P.2d 401].) ▮ The negligence of Jones was the primary act of negligence. It continued and existed up to the time of the injury. It conjoined with the negligence of The Howard Zink Corporation. The act of the latter was to be anticipated. It was foreseeable. It was an intervening force in the chain of causation. Such intervening force was not a superseding cause and did not break the chain of causation where what occurred was reasonably foreseeable. (*Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 218 [157 P.2d 372, 158 A.L.R. 872]; *Katz* v. *Helbing,* 215 Cal. 449, 451 [10 P.2d 1001].)

In the recent case of *Gibson* v. *Garcia,* 96 Cal.App.2d 681 [216 P.2d 119], we said, page 684: ''It is well settled that proximate causation is not always arrested by the intervention of an independent force. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate concurring cause for which full liability may be imposed. (*Gerberich* v. *Southern Calif. Edison Co.,* 5 Cal.2d 46 [53 P.2d 948]; *Lacy* v. *Pacific Gas & Electric Co.,* 220 Cal. 97 [29 P.2d 781]; *De Corsey* v. *Purex Corp.,* 92 Cal.App.2d 669, 675 [207 P.2d 616].) . . . [I]n order to prevent an intervening act from being a superseding cause which will relieve

the defendant of responsibility for his negligence, the law does not inevitably require that the precise act be foreseeable. Numerous cases have declared that if the defendant's conduct exposes persons in the class to which plaintiff belongs to a foreseeable risk of injury, and his act or omission contributes substantially to injury of that nature actually occurring, he may be held liable notwithstanding the fact that an unforeseeable independent intervening act is a concurring cause. (Prosser on Torts, pp. 369-372, and cases cited; *Sandel* v. *State,* 115 S.C. 168 [104 S.E. 567, 13 A.L.R. 1268].) As the Supreme Court stated in *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594, 602 [110 P.2d 1044], 'the fact that neither party could reasonably anticipate the occurrence of the other concurrent cause will not shield him from liability so long as his own negligence was one of the causes of the injury. (*Herron* v. *Smith Bros., Inc.,* 116 Cal.App. 518 [2 P.2d 1012]; *Sawdey* v. *Producers' Milk Co.,* 107 Cal.App. 467 [290 P. 684].)' (See, also, *Rodriguez* v. *Savage Transportation Co.,* 77 Cal. App.2d 162, 168-169 [175 P.2d 37].) The principle is recognized in section 435 of the Restatement of Torts: 'If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm *or the manner in which it occurred* does not prevent him from being liable.' (Emphasis added.)'' (See, also, *Carroll* v. *Central Counties Gas Co.,* 74 Cal.App. 303 [240 P. 53].)

On the facts the negligence of Jones was a direct proximate cause of the injury. The acts of the defendants operated concurrently to produce the injury. The jury was fully and fairly instructed on negligence, proximate cause, and contributory negligence. It was told that plaintiff could not recover against Jones unless it found that Jones was negligent, that her negligence was a proximate cause of the injury, and that plaintiff was not guilty of contributory negligence. The jury was also told that ''the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such a case, each of the participating acts or omissions, is regarded in law as a proximate cause.'' ██ As the acts of Jones and The Howard Zink Corporation operated concurrently, there was no error in refusing to instruct the jury on the subject of superseding cause. (*Traylen* v. *Citraro,* 112 Cal.App. 172, 176 [297 P. 649].) It is the duty of a trial court to refuse a requested instruction which incorrectly states the

law. (24 Cal.Jur. 802, § 77.) The offered instruction was properly refused.

Judgment and order affirmed.

Wood, J., concurred.

SHINN, P. J.—I concur. The manner in which the jury was instructed illustrates a practice that has grown up in the matter of instructions which I believe calls for comment.

Many lawyers share the belief that instructions are given little consideration in the deliberations of jurors. While this may be true in some cases, I believe they follow them to the extent they understand them and give up only when they become bewildered. I also believe that juries are usually instructed at such length and with such a superfluity of legal words and phrases as to make it impossible for them to separate the wheat from the chaff. But lawyers hold to their prolixity and to their pompous definitions just as medical witnesses hold to their Latin, although they would discover, upon slight inquiry, that laymen have as little respect for the one as for the other, and not much more understanding. The legal profession has not only failed to progress in this branch of procedure, but in some respects has retrogressed. The time was when trial lawyers understood the importance of instructing juries in a manner that would aid them in applying principles of law to established facts. It was recognized that in reaching a decision upon a factual issue, as, for instance, negligence, the jury would have to determine first what was the conduct of the party charged with negligence. If the conduct consisted of driving a vehicle, the jury might have to decide whether it was driven in violation of statutory law or without the exercise of ordinary care. It was the practice in a case of this kind to state the facts hypothetically, and in the alternative; under certain facts the jury was to find negligence, under other facts that there was no negligence. Under this practice the party in whose favor a rule of law operated would receive the full benefit of it, if the facts were found in his favor. If this procedure had been followed in the present case, a proper instruction as to the alleged negligence of Howard Zink Corporation would have read as follows: "If you conclude from the evidence that the employee of Howard Zink Corporation, in closing the warehouse door, failed to exercise the care that would have been exercised under the circumstances by a person of ordinary prudence you should find defendant Howard Zink Corporation guilty of negligence." As to the claimed

negligence of plaintiff a proper instruction would have been: "If you find that plaintiff, in passing by the warehouse door, failed to exercise the care that would have been exercised under the circumstances by a person of ordinary prudence, you should find plaintiff guilty of negligence." Instead of simple instructions such as I have suggested, eleven instructions on negligence and contributory negligence were given. These were all stated in cold, abstract terms, and involved a considerable amount of repetition. Together, they constituted an abstruse treatise on negligence of such length as to fag the minds of the jurors. If we agree with Dr. Millikan that an educated person is one who can concentrate for more than two minutes on a given subject, and if we assume that the average juror is not possessed of super intelligence, it would seem to follow that a few brief, clear, instructions applying legal principles to specific facts would serve a better purpose than eleven which stated the same principles in broad general terms and at unnecessary length.

My next comment is upon the instructions on proximate cause. These were three in number, although the words "proximate cause" are found in numerous of the other instructions. One of the instructions read as follows: "The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies." The instruction on intervening agency that was refused is substantially in the form of one that is commonly used. But even if the errors in it had been corrected it would not have been a satisfactory instruction. While it is customary to give these abstruse instructions on proximate cause and intervening agency, I doubt that they have ever had an effect upon the mind of an average juror except to confuse him. He is required to decide for himself whether certain conduct operated "in natural and continuous sequence," a phrase that is calculated to becloud his thinking. He must decide whether the conduct of a party "necessarily" set in operation the factors that accomplished the injury. Is he to distinguish between results reasonably to be anticipated and "necessary" results, and if so, how is he to draw a distinction? One cause is the "efficient cause," which "necessarily sets in operation

the factors that accomplish the injury'' and the other is the ''efficient intervening cause that produces the injury.'' I doubt that jurors comprehend these confusing terms or even remember them. I believe they decide, as they should, that the negligence of the driver of a vehicle was a proximate cause of a collision if he was driving in a manner that was likely to cause a collision. The operation of the doctrine of proximate cause should be illustrated by application to the facts of the case, without attempt at definition. The definition of proximate cause that is commonly used was taken from Sherman & Redfield on Negligence, section 34, 1941 Revised Edition. It is a statement of theory addressed to students of law, and was not proposed by the authors as a definition to be incorporated in instructions.

Juries do not decide the question of proximate cause, as such. They determine what the conduct of the parties was, whether it was negligent, and whether the negligent conduct was a cause of the injury. The factual decision as to the conduct of a party always furnishes an answer to the question of negligence and almost always to the question of proximate cause. Just as the jury should be instructed that specific conduct would or would not constitute negligence, so it should be instructed that upon one hypothetical set of facts deducible from the evidence, certain negligent conduct would be a proximate cause of the injury, and upon an opposing set of facts it would not be a proximate cause. For illustration, in the present case, with reference to the conduct of the Howard Zink employee, it would have been proper to instruct to the effect that if it was found he was negligent in closing the door and that his negligence was the cause or one of the causes of plaintiff's injury, such negligence would be a proximate cause of the injury. No other reasonable conclusion could have been reached. Likewise, it would have been proper to instruct that if it was determined that plaintiff in passing by the door was guilty of negligence, without which she would not have been injured, her negligence was a proximate cause of her injury. This also would result as a matter of law. As to defendant Jones, owner of the warehouse building, it was undisputed that the door was maintained in violation of the city ordinances. The jury could properly have been instructed on this subject as follows: ''If you find it was reasonably to be anticipated that the opening or closing of the warehouse door would cause injury to pedestrians using the alley, and that plaintiff was injured in this manner, you should find that

the maintenance of the door in violation of the ordinances was a proximate cause of plaintiff's injury.''

Not only in the instances I have mentioned, but in every case, the jury must find the facts as to conduct from which it would follow, as a matter of law, whether such conduct was a proximate cause of an injury. Arguments to the jury on proximate cause are necessarily based upon opposing assumed facts. These furnish a yardstick, which is all the jury needs. Instructions should follow the same pattern. Abstract instructions furnish only a slide rule, which the jurors probably are unable to use.

Altogether, 69 instructions were given, 57 of which were taken from the book entitled ''California Jury Instructions'' or ''Book of Approved Jury Instructions.'' They cover 33 pages of the reporter's transcript; 15 of them, covering 7½ pages, related to damages alone. Although all were correct statements of legal principles, not one of them was redrafted so as to fit any supposed set of facts upon which any of the parties relied. And I remark again that instructing at such length as to overtax the minds and endurance of the jurors defeats its own purpose. Moreover, numerous and repetitious instructions upon a single phase of the case tend to place undue emphasis upon it.

My comments are not critical of the able trial judge, the very capable lawyers in the case, or the form book of instructions. This work has been of considerable assistance to attorneys and the courts. I am sure, however, the authors did not intend it to be used, and that it should not be used, so as to relieve the attorneys in the case of all initiative and responsibility. I criticize the practice which assumes that jurors have unlimited capacity for the assimilation of legal phraseology. Lawyers know it is not true but continue to use their stilted, formal instructions. The rules of law applicable to the ordinary case can be stated simply, and in language a layman can understand. But what is more important, they can easily be made to fit the facts of the case. There are several good law review articles upon the general subject. (Trusty, *"The Value of Clear Instructions,"* 15 Univ.Kan. City L.Rev. 9; Chestnut, ''Instructions to Jurors,'' 6 Ky. State B.J. No. 3, p. 48; 98 U.Pa.L.Rev. 223; 28 Ky.L.J. 469; 19 Iowa L.Rev. 603.)

A petition for a rehearing was denied May 24, 1950, and appellants' petition for a hearing by the Supreme Court was denied July 6, 1950.