[Civ. No. 23282. Second Dist., Div. Three. Jan. 27, 1959.]

EUNICE GARBUTT, Respondent, v. HARRY SCHECHTER et al., Appellants.

Moss, Lyon & Dunn, Sidney A. Moss and Henry F. Walker for Appellants.

Robert Silver and Eugene E. Glushon for Respondent.

SHINN, P. J.—In a jury trial Eunice Garbutt was awarded verdict and judgment in the amount of $25,000 for personal injuries sustained in a fall from a chair in a place of business of defendants Schechter. Defendants made a motion for new trial which was denied and they have appealed from the judgment, contending there was no evidence that the chair from which plaintiff fell was unsafe for patrons to sit upon and that they were not guilty of negligence.

Plaintiff and her husband entered defendants' place of business for the purpose of purchasing some lace. They were shown into a small showroom by a receptionist where plaintiff stood at the end of a table looking at a lace sample book. Mr. Garbutt seated himself on a chair. Harry Schechter came in to wait upon them, plaintiff selected some lace and as Harry Schechter was leaving to have the lace packaged he asked plaintiff to be seated and plaintiff sat on an "S" shaped chrome chair that had no arm rest.

Plaintiff was 5 feet, 4 inches in height and 200 pounds in weight. She had had surgery in her lower spine. As she seated herself the chair tipped forward and went out from under her, causing her to fall to the floor. Due to her condition it was necessary for her to get onto her knees to arise from that position. As she fell, her left foot went out from under her but she was able to arise and stood waiting Mr. Schechter's

return. As a result of the fall she was required to undergo surgery; she had not worked since the accident and the business she had conducted was sold at inventory prices. After her first surgery she would seat herself as follows: ''I would sit down very carefully, then move myself back, because I had no bottom spine, so I would sit down on the chair . . . like this and then move myself back into the chair.'' She had seen the same type of chair many times and had seen them in use, but did not recall whether she had previously sat on one of them.

The chair was introduced in evidence as an exhibit and is before us as a part of the record. The frame of the chair is composed of 1-inch aluminum tubing and the seat is supported only by legs in front which are directly in line with the front of the seat and are curved backward near the bottom. The framework which serves the purpose of legs commences to curve backward at a point 4 inches above the floor and it reaches the floor 4 inches to the rear of the front edge of the seat. Beyond that the base of the frame is flat and sufficiently well designed to prevent the chair from tipping backward, but due to the curve of the legs it has a tendency to roll forward. The seat of the chair measures 14 inches from front to back and its center of gravity was determined by experiment to be 5 inches forward of the back of the seat and the point of support furnished by the front legs to be about $3\frac{1}{4}$ inches from the front edge of the seat. Also it had been determined by experiment that the chair would overturn forward upon the application of different weights at different points on the seat forward of the point of support, whereas weight placed behind the point of support would not cause it to overturn. It was an obvious fact that when the chair overturned more of plaintiff's weight rested forward of the point of support than behind it. Equally obvious is the fact that the plaintiff's weight would be shifted to the front or the rear of the point of support as she might have leaned forward or backward.

The questions for the jury were whether the chair created an unreasonable risk for customers and whether defendants knew or in the exercise of reasonable care would have known that fact. If, upon the evidence, reasonable minds might differ as to the answers, we are concluded by the implied findings of the jury. Only in case we could say that an affirmative answer to either of these questions would be unreasonable would we be justified in holding the evidence to be insufficient to

support the verdict. Counsel for defendants, of course, do not question that the power of a reviewing court is thus limited.

Defendants say "There is nothing inherently dangerous in such chair. Perhaps, there is no more simple or ordinary appliance than a chair. Persons using chairs do not ordinarily place themselves thereon in the manner described by plaintiff as being the manner in which she placed herself upon this chair. To place one's weight on the forward end or edge of a chair is extremely unusual and not to be expected. There is no evidence that defendants or either of them had the slightest inkling that plaintiff here would do so." They contend that an unusual combination of circumstances contributed to the accident, namely, plaintiff's weight and her physical condition, which made it necessary for her to rest her weight at first upon the front part of the seat and to attempt to move backwards on the seat. They then argue that they had no duty to anticipate this unusual combination of conditions and apparently contend that in any other circumstances the chair would not have toppled over. They say that chairs of this type are in common use, but if this be granted, it is nevertheless a fact that the design is a wide departure from common standards of chair construction. This chair is so designed that it rocks forward when weight is applied to the front part of the seat. As a chair it is an oddity in which safety has been sacrificed to the convenience and economy of using metal tubing with easy bends at the bottom of the front legs, which give the seat the only support it has. It is of the type of newfangled creations that are called modern, and which are designed more to please the eye than to provide the stability one expects to find when reposing the anatomy upon a chair in a place of business.

Although defendants were not required to anticipate that someone might use the chair in the identical manner in which plaintiff attempted to seat herself upon it, they were required to furnish chairs for their customers that would provide them with reasonable safety. (*Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418 [218 P.2d 43], and cases cited.) It is quite likely that a smaller or a more nimble person would not have fallen or might not have been hurt, but if this were true it would not acquit defendants of negligence. The well recognized fact that big persons fall harder than small ones is relevant only to the extent of plaintiff's injuries which, admittedly, were serious.

Defendants owed a duty toward all invitees, not merely to a selected few. ■ A large woman is as much entitled to a safe chair as a small one and is much more in need of it. (*Robinson* v. *Pioche, Bayerque & Co.*, 5 Cal. 460.)

■ It is inherent in the verdict that the jury believed it to be a practice reasonably to be anticipated that women are likely to sit on the edges of chairs, and are especially prone to do so when examining samples at dress goods counters. We think that was a fair and reasonable conclusion. Also it was demonstrated that the chair will go out from under one who sits forward on the seat, although a conventional chair, used in the same manner, would provide safety.

Inasmuch as we are of the opinion that the implied findings of the jury upon the material issues have ample support in the evidence the judgment must be and is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied February 25, 1959.